THE OCEAN STEAMSHIP COMPANY *v.* CHEENEY.

A steamship company is not liable in damages for an injury to its laborer employed in stowing cotton in the hold of its vessel, by a bale of cotton thrown down the hatchway, where the injury is caused by the failure of the hatch-tender (who is usually the engine-driver or is taken indifferently from the laborers employed in loading the vessel) to give warning of the approach of the falling bale, whether it be thrown when the hatch-tender is present and fails to give the warning, or, while he is absent, it be thrown without notice by another servant engaged in the same business. In either case the injury is occasioned by the negligence of a fellow-servant.

December 1, 1890.

Negligence. Master and servant. Before Judge HARDEN. City court of Savannah. July term, 1890.

Action by Cheeney against the steamship company for damages, alleging that he was employed by it to stow cotton in the hold of its ship; that it was the company's duty to give notice at the hatchway whenever a bale of cotton was thrown into the hold, so that persons engaged in stowing the cotton below might get out of the way of the falling bale and avoid injury to themselves, but at the time in question the company did not give such warning, and the bale was thrown down without notice to plaintiff, and it struck him and inflicted permanent injuries; that he was acting with due care and caution; that the company had always kept a man stationed at the hatchway, as was its duty, to give warning whenever a bale of cotton was thrown down, but on this occasion it did not have and keep a man so stationed and did not cause any notice or caution to be given when the bale was thrown down, and was thus guilty of gross negligence and indifference to the safety of its employees; and that the injury was caused by the negligence of the company in causing the bale to be thrown down the hatchway into the hold, instead of having it properly lowered by the proper tackle

usually used for such purposes, without giving any notice or warning when the bale was so thrown.

The testimony for the plaintiff tended to show as follows: He was employed by the defendant and was in the forward-hold of its ship, stowing cotton, about ten feet from the hatch. He had a bale of cotton on his knees, and was in the act of moving it when another bale was thrown down from the upper deck without warning, and struck him, inflicting the injuries complained of. The proper and usual way. to put the cotton into the hold was to lower it with hooks, though it was not uncommon for it to be thrown down, especially when they were in a hurry to load the vessel, but the custom was, when it was thrown down, to have a signal given both from above and below, so that the men who were at work below would be on their guard, and also, when the cotton was thrown down, to have a hatch-tender on the upper deck to throw it down or superintend it. Sometimes the wild truckmen would rush on the vessel with cotton and throw it down if no one were minding the hatch. Some cotton had been thrown down before the plaintiff was hurt, and he and other hands were engaged in stowing it when the bale in question was thrown without warning. Five bales were generally lowered, and then it was the custom to begin to throw bales down when the gang below asked for them, and to give warning before they were thrown. About five bales had been thrown down, and then they stopped throwing, and the gang below started to moving them, and the first one that was thrown down after this was the one which struck the plaintiff. In throwing down the previous lot warning had been given. The donkey-engine was at the hatch and had steam on, and could have been used for lowering the cotton, but this was not done. The plaintiff had been at work in the after-hold stowing rosin, and

truckmen were throwing cotton down the hold when he and other hands went there from the after-hold; the gang had to wait until the trucks had ceased, and it was when the truckmen went off to get more cotton that plaintiff and others went down the hold and commenced stowing the cotton which had been thrown down, and before they got through stowing it the trucks came in again, and the first bale that was thrown down was the one that hit him. He had no notice that they were going to throw any this time, nor had notice been given from the bottom for cotton to be thrown down, as was usual and as should have been done before any was thrown. There is generally a man at the hatch, called a hatch-tender, to sing out to the men at work in the hold when cotton was going to come down; but none was there at this time. When he came up at first, the men were throwing the cotton down, and no hatch-tender was there; if one had been there, the truckmen would not have been dumping the cotton, and plaintiff and his companions would not have had to wait before they went down into the hold. It did not occur to him that the next man who came up would dump the cotton down, but he thought there would be somebody there to have charge of it. The men were moved around on the shortest notice, the hatch-tender being generally a colored man who got the same pay as the members of the gang plaintiff belonged to; he was usually a man taken from the gang, but must know his business; the foreman generally put him there at the hatch, the foreman's duties being to superintend around and put the men at work and suit himself generally. When the truckers come up to the hatch and find no hatch-tender there, they always give the notice themselves when they are going to throw a bale down; they are not allowed to do it, but did it sometimes unless there was a foreman somewhere between

decks to see them and stop them, or put a man there as hatch-tender; if a foreman saw a set of trucks and a crowd of cotton, he appointed a man as hatch-tender and put the cotton off the trucks; sometimes there might be one or two trucks at the hatch before the man got there; the foreman would have to go out and get a man and send him there, because he could not take any man; the lives of all the men in the hold were in the hands of the man at the hatch; sometimes an incompetent man was put in as hatch-tender, and the men in the hold refused to work until another was put in that they were not afraid of.

Evidence for the defendant: The foreman of its stevedoring department was sometimes on the ship and sometimes on the wharf, his duties being to look after the stowing of the ship and see that the men attended to their duties.   Ten or fifteen minutes before the plaintiff was hurt, the foreman was there and everything was going on all right, and there was then a man attending to the hatch, whose name the foreman did not remember.   When the men in the hold wanted more cotton they sang out, "Heave her down," and the duty of the man at the hatch was, to give them more and sing out every time he heaved. He generally heaved several bales, singing out, "Stand clear," and after getting through, sang out, " Take them out," and when the men came to take them out he would stop.   The hatch-tender should be a reliable man, and was generally the donkey-engine man when he was not engaged, and if he were busy, one of the wharf-hands who could sing out loud was taken; he had nothing else to do but to stand there and give warning.   The foreman generally goes around and sees that some one is at the hatch.   It is generally the custom on this steamer to truck the cotton in and throw it down, there being only one ship of the defendant on which it is lowered with

hooks on account of the smallness of its hatch and the depth of its holds. The cotton which was being thrown down ten or fifteen minutes before this accident occurred, was thrown down by the hatch-tender himself when the foreman was there, and the truckmen did not have anything to do with it. The foreman testified that the defendant always had a hatch-tender, always put one there and did not allow truckmen to throw the cotton down, under any circumstances, when men were below. He was not present when the accident occurred. Another witness testified that when the accident occurred, a man whose name was not remembered, was tending hatch, and witness was assisting him and shoving the cotton up to the hatch. The hatch-tender was singing out "under" when he threw the cotton down, all that day. Witness was positive the signal was given to throw down cotton, that he and the hatch-tender both called out to "stand from under," that three bales were thrown down, and that no bale of cotton was thrown while he was there without warning being given, and he was there when the plaintiff was hurt.

There was a verdict for the plaintiff; and a motion by the defendant for a new trial was overruled, and exceptions were taken.

LAWTON & CUNNINGHAM, for plaintiff in error.

J. R. SAUSSY, *contra*.

SIMMONS, Justice.

We think the court erred in not granting a new trial in this case. The evidence clearly shows that the company had placed a man at the hatchway to give notice to the hands below. The foreman testified that the hatch-tender was at the hatchway about fifteen minutes before the accident, and was in the discharge of his duty. Middleton, one of the plaintiff's witnesses, testified that there were some bales that came down before the one that hit Cheeney, and when they came, a warning was

given and all got out of the way and nobody was hurt. This shows that a person had been placed to attend the hatchway, and gave warning to those below; but it seems that no warning was given when the bale which hurt Cheeney was thrown down.

The hatch-tender was usually the engine-driver or one of the hands employed to assist in loading the vessel. It appears that no special person was designated for this service, but that the hatch-tender "was taken indifferently from the laborers." He was engaged by the company in the same business that all the other hands of the gang were engaged in, to wit, the loading of the vessel with freight. He was therefore a co-employee with the other persons engaged in this business; and if, when stationed at the hatchway for the purpose of giving notice to the hands below, he failed to give that notice, or if he absented himself from the hatchway, and while absent, some other person engaged in the business threw the bale down into the hold without notice to those below, and the plaintiff was thereby injured, it was in consequence of the negligence of a co-employee; and under the law he cannot recover for such negligence. We do not think it makes any difference whether the bale was thrown down when the hatch-tender was present and failed to give notice, or whether in his absence some other co-employee threw the bale down; in either case it would be the negligence of a co-employee. It would be the negligence of the hatch-tender in not giving notice, or in absenting himself from the hatchway; or in case it was done in the hatch-tender's absence, the negligence of some other co-employee in throwing the bale down without notice.

While this plaintiff seems to be a poor man and to have been dreadfully hurt, and while we sympathize with him greatly in his misfortune, we are compelled

under our sense of duty to hold that under this evidence the law does not entitle him to recover from this steamship company. .        *Judgment reversed.*