# NEW ENGLAND RAILROAD COMPANY *v.* CONROY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 42. Argued April 8, 4, 1899. — Decided December 4, 1899.

The negligence of a conductor of a freight train is the negligence of a fellow servant of a brakeman on the same train, who was killed by an accident occurring through that negligence.

The negligence of such conductor is not the negligence of the vice or substituted principal or representative of the railroad company running the train, and for which that corporation is responsible.

The general rule of law is that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment.

An employer is not liable for an injury to one employé occasioned by the negligence of another engaged in the same general undertaking; it is not necessary that the servants should be engaged in the same operation or particular work; it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end; and accordingly, in the present case, upon the facts stated, the conductor and the injured brakeman are to be considered fellow servants within the rule.

While the opinion in *Chicago, Milwaukee & St. Paul Railroad Co.* v. *Ross,* 112 U. S. 377, contains a lucid exposition of many of the established rules regulating the relations between masters and servants, and particularly

as respects the duties of railroad companies to their various employés, it went too far in holding that a conductor of a freight train is, *ipso facto,* a vice principal of the company; and in so far as it is to be understood as laying down, as a rule of law to govern in the trial of actions against railroad companies, that the conductor, merely from his position as such, is a vice principal, whose negligence is that of the company, it must be deemed to have been overruled, in effect if not in terms, in the subsequent case of *Baltimore & Ohio Railroad* v. *Baugh,* 149 U. S. 368.

THIS was an action against a railroad corporation by a brakeman in its employ to recover damages for a personal injury caused by the negligence of the conductor of one of its trains.

The facts in this case, as stated in the certificate of the Circuit Court of Appeals, were as follows:

" On the fifteenth day of December, 1894, a freight train of the defendant company, drawn by a steam locomotive, and carrying an engineer, a fireman, three brakemen and a conductor, set out from Worcester, in the Commonwealth of Massachusetts, for the city of Providence, in the State of Rhode Island. The train, which consisted of the locomotive and tender, thirteen or fourteen freight cars, and a caboose car, was heavily loaded with freight. The train left Worcester at about 7.15 P.M. and proceeded on its way without accident, until when at a point on the railroad in the State of Rhode Island, away from telegraphic communication and not at a station, and distant from Providence about sixteen miles, the engineer discovered by the motion and behavior of the locomotive that the train had broken apart. He immediately gave signals with the whistle to indicate to the trainmen upon the rear portion of the train that it was broken off, and continued to repeat those signals, which consisted of three rapid blasts of the whistle with very brief intervals between the different threes, while the locomotive and the one car which remained connected ran three quarters of a mile. The locomotive with the connected car ran about two and three quarters miles when the engineer, not being able to see anything of the separated part of the train, and supposing that his signals had been heard and its advance stopped, slowed up the engine preparatory to sending the fireman back

with the lantern and to take steps for restoring the connection of the parts of the train. Before speed had been so reduced that the fireman could alight from the train, the rear portion was discovered close at hand and approaching at great speed. The fireman gave notice of this fact and a signal for the locomotive to go ahead, but before it could gain .speed to get away a collision between the two parts of the train took place, and one Gregory, a brakeman, who was on the top of the car still attached. to the engine, was thrown from the car by the shock and instantly killed.

" The three brakemen on the train were a head, a middle, and a rear brakeman. Gregory was the head brakeman, and at once, on discovery of the separation of the train, went to the top of the only car left with the engine. ˙The conductor and the middle and rear brakemen had been riding in the caboose car at the rear end of the train, and did not hear the warning signals which the engineer gave with the whistle, nor know that the train had broken until the collision, but remained all the time in the caboose. The night was cold and clear. The accident was near midnight.

"The negligence complained of consisted in the alleged failure of the conductor in control of the men and in charge of the train, in view of the character of the night, the character of the road in respect to grades and curves, the speed at which the train was run, and the liability of the train to part asunder at that place, to properly watch and supervise its movements, and the fact that he, in the full knowledge that the rear and middle brakemen were in the caboose, away from their brakes, permitted them to remain there, and failed to order them to the brakes."

The jury were instructed : " The conductor of the train, under the rules laid down by the rules of the Supreme Court of the United States, is in a peculiar and special condition. The conductor of the train, as I understand the theory of the rule of the Supreme Court of the United States, is, in a certain sense, between stations, at least, is in a certain sense like the master of a ship on a voyage ; he is beyond the reach of orders when running his train between stations ; and there-

fore as a matter of necessity, as a matter of public policy, I suppose, he must be held to stand in the place of the corporation itself. . . . If you find in this particular case, from the evidence in the case and such common knowledge as jurymen are entitled to use, that by the rules of this road . . . the conductor gave directions to the people who worked on the train, gave directions to start the train, gave directions to stop the train, gave directions as to the location and position of the different men on the. train, and also had the general management of the train and control over it when running between stations, then I say to you, gentlemen, that he for this case represents the company, and if injuries resulted from his negligent acts the company is responsible."

The jury returned a verdict for the plaintiff, and assessed damages in the sum of four thousand two hundred and' fifty dollars.

The defendant brought the case by writ of error to the United States Circuit Court of Appeals for the First Circuit.

And, upon consideration of the case, after full argument, the judges of that court desired the instructions of the Supreme Court upon the following questions of law arising on the facts as before stated :

1st. Whether the negligence of the conductor was the negligence of a fellow servant of the deceased brakeman ?

2d. Whether the negligence of the conductor was the negligence of its vice or substituted principal or representative, for which the corporation is responsible ?

*Mr. Frank A. Farnham* for plaintiff in error.

*Mr. James E. Cotter* for defendant in error.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

It may be doubted whether the questions of law presented to us are really raised by the facts as certified. No facts are. stated from which the jury might have found that, at the

time and place of the accident, there was any special reason why the brakemen should have been ordered by the conductor to take their places at the brakes, and therefore it is by no means evident that there was any dereliction of duty on the part of the conductor.

Nor is it clear that the negligence of the conductor, if negligence it was, in permitting the brakemen to ride in the caboose, was the proximate cause of Gregory's injuries. When the train parted the engineer had charge and control of the locomotive and attached cars, and it would seem to have been his duty, as it was within his power, to have prevented the subsequent collision of the detached parts. And, in that event, the case would be ruled by *Baltimore & Ohio Railroad Co.* v. *Baugh*, 149 U. S. 368, where it was held that the engineer and fireman of a locomotive engine, running alone on a railroad and without any train attached, are fellow servants, so as to preclude the latter from recovering from the company for injuries caused by the negligence of the former.

However, waiving these suggestions, and proceeding on the assumptions of the courts below that it was the duty of the conductor, at the time and place of the accident, to have the brakemen on the top of the cars where they could apply the hand brakes, and that his failure to do so was the proximate cause of the injury to the plaintiff's intestate resulting from the subsequent collision of the detached portions of the train, we meet the question, Would, in such a state of facts, the company be liable to the injured brakeman for the negligence of the conductor?

There is a general rule of law, established by a great preponderance of judicial authority in the English and in the state and Federal courts, that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment. But there have been conflicting views expressed in the application of this rule in cases where the employer is a railroad company, or other large organization, employing a number of servants engaged in distinct and separate departments of service; and our present inquiry is whether the relation between

the conductor and the brakeman of a freight train is that of fellow servants, within the rule, or whether the conductor is to be deemed a vice principal, representing the railroad company in such a sense that his negligence is that of the company, the common employer.

Unless we are constrained to accept and follow the decision of this court in the case of *Chicago, Milwaukee & St. Paul Railway Co.* v. *Ross*, 112 U. S. 377, we have no hesitation in holding, both upon principle and authority, that the employer is not liable for an injury to one employé occasioned by the negligence of another engaged in the same general undertaking; that it is not necessary that the servants should be engaged in the same operation or particular work; that it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end ; and that, accordingly, in the present case, upon the facts stated, the conductor and the injured brakeman are to be considered fellow servants within the rule.

We shall refer to a few of the authorities which establish these principles. *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, is the leading case in Massachusetts. The question was thus stated by Chief Justice Shaw :

"This is an action of new impression in our courts, and involves a principle of great importance. It presents a case, where two persons are in the service and employment of one company, whose business it is to construct and maintain a railroad, and to employ their trains of cars to carry persons and merchandise for hire. They are appointed and employed by the same company to perform separate duties and services, all tending to the accomplishment of one and the same purpose — that of the safe and rapid transmission of the trains; and they are paid for their respective services according to the nature of their respective duties, and the labor and skill required for their proper performance. The question is,

whether, for damages sustained by one of the persons so employed, by means of the carelessness and negligence of another, the party injured has a remedy against the common employer."

After discussing the principles of law and reason applicable to the case, the Chief Justice proceeded:

" In applying these principles to the present case, it appears that the plaintiff was employed by the defendants as an engineer, at the rate of wages usually paid in that employment, being a higher rate than the plaintiff had before received as a machinist. It was a voluntary undertaking on his part, with a full knowledge of the risks incident to the employment, and the loss was sustained by means of an ordinary casualty, caused by the negligence of another servant of the company. Under these circumstances the loss must be deemed to be the result of a pure accident, like those to which all men, in all employments, and at all times, are more or less exposed ; and, like similar losses from accidental causes, it must rest where it first fell, unless the plaintiff has a remedy against the person actually in default ; of which we give no opinion.

"It was strongly pressed in the argument, that although this might be so, where two or more servants are employed in the same department of duty, where each can exert some influence over the conduct of the other, and thus to some extent provide for his own security ; yet that it could not apply where two or more are employed in different departments of duty, at a distance from each other, and where one can in no degree control or influence the conduct of another. But we think this is founded upon a supposed distinction on which it would be extremely difficult to establish a practical rule. When the object to be accomplished is one and the same and the employers are the same, and the several persons employed derive their authority and their compensation from the same source, it would be extremely difficult to distinguish what constitutes one department and what a distinct department of duty. It would vary with the circumstances of every case. If it were made to depend upon the nearness or distance of the persons from each other, the question would immediately arise, how

near or how distant must they be to be in the same or different departments? In a blacksmith's shop persons working in the same building at different fires may be quite independent of each other, though only a few feet distance. In a ropewalk several may be at work on the same piece of cordage, at the same time, at many hundred feet from each other and beyond the reach of sight and voice, and yet acting together.

"Besides, it appears to us, that the argument rests upon an assumed principle of responsibility which does not exist. The master, in the case supposed, is not exempt from liability, be- cause the servant has better means of providing for his safety, when he is employed in immediate connection with those from whose negligence he might suffer; but because the implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself; and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand toward him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied. The exemption of the master, therefore, from liability for the negligence of a fellow servant does not depend exclusively upon the consideration, that the servant has better means to provide for his own safety, but upon other grounds. Hence the separation of the employment into different departments cannot create that liability, when it does not arise from express or implied contract, or from a responsibility created by law to third persons and strangers, for the negli- gence of a servant. . . . The responsibility which one is under for the negligence of his servant, in the conduct of his business, toward third persons, is founded on another and dis- tinct principle from that of implied contract, and stands on its own reasons of policy. The same reasons of policy, we think, limit this responsibility to the case of strangers, for whose security alone it is established. Like considerations of policy and general expediency forbid the extension of the principle, so far as to warrant a servant in maintaining an action against his employer for an indemnity which we think was not con- templated in the nature and terms of the employment, and which, if established, would not conduce to the general good."

In *Holden* v. *Fitchburg Railroad Co.*, 129 Mass. 268, which was a case in which damages were claimed by a person employed to act as a laborer in the removal of a mass of earth overhanging the defendant's railroad, on the alleged ground of negligence on the part of a roadmaster who had charge of that portion of the railroad, the case of *Farwell* v. *B. & W. Railroad*, 4 Met. 49, was followed; and it was held, on principles established in that and subsequent cases, that it makes no difference that the servant whose negligence causes the injury is a submanager or foreman, of higher grade or greater authority than the plaintiff; and, in discussing the cases, Chief Justice Gray cited the case of *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326, 332, 334, 335, 336, and some of the observations made by the justices who delivered judgments therein in the House of Lords. Thus Lord Chancellor Cairns said:

"The master is not and cannot be liable to his servant unless there be negligence on the part of the master in that in which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business." "But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this he has, in my opinion, done all that he is bound to do. And if the persons so selected are guilty of negligence, this is not the negligence of the master." Lord Colonsay said: "I think that there are duties incumbent on our masters with reference to the safety of laborers in mines and factories, on the fulfilment of which the laborers are entitled to rely, and for the failure in which the master may be responsible. A total neglect to provide any system of ventilation for the mine may be of that character. Culpable negligence in supervision, if the master takes the supervision on himself, or, where he devolves it on others, the heedless selection of unskilful or incompetent persons for the duty; or the failure to provide or supply the means of providing proper machinery or materials may furnish ground of liability."

And see likewise the case of *Clifford* v. *Old Colony Railroad*, 141 Mass. 564, in which it was held that a section hand in the employ of a railroad corporation cannot maintain an action against the corporation for personal injuries caused by a collision between a hand car on which he was at work and an engine of a train run by servants of the corporation if the accident was occasioned by the negligence of the section boss and the engineer of the train.

In *Sherman* v. *Rochester & Syracuse Railroad*, 17 N. Y. 153, it was held by the New York Court of Appeals that a servant who sustains an injury from the negligence of a superior agent engaged in the same general business, can maintain no action against their common employer, although he was subject to the control of such superior agent, and that, accordingly, a brakeman upon a railroad whose duty it is not to apply the brakes except when directed by the engineer or conductor cannot maintain an action against their common employer for an injury resulting from the culpable speed at which the engineer and conductor ran the train. And this appears to be the settled doctrine in the State of New York. *Besel* v. *N. Y. C. & H. R. Railroad*, 70 N. Y. 171, 173; *De Forest* v. *Jewett*, 88 N. Y. 264.

The Supreme Court of Pennsylvania has held, in numerous cases, and it is settled law in that State, that a fellow servant, within the meaning of the rule, is any one serving the same master, and under his control, whether equal, inferior or superior to the injured person in his grade or standing, and the fact that the injured servant was under the control of the servant by whose negligence the injury was caused makes no difference. *Weger* v. *Pennsylvania Railroad Co.*, 55 Penn. St. 460; *Lehigh Valley Coal Co.* v. *Jones*, 86 Penn. St. 432.

In *Columbus & Indianapolis Central Railway* v. *Arnold*, 31 Indiana, 174, the Supreme Court of Indiana held, reversing some previous cases to the contrary, that it is the duty of a railroad company to use all reasonable care in the proper construction of its road, and in supplying it with the necessary equipment, and in the selection of competent subordinates to supervise, inspect, repair and regulate the machinery, and to regulate and control the operation of the road; and that if

these duties are performed with care by the company, and one of the persons so employed is guilty of negligence by which an injury occurs to another, it is not the negligence of the master, and the company is not responsible.

Without following further the history of this subject in the courts of the several States, we may state that, generally, the doctrine there upheld is that of the cases herein previously cited, except in the courts of the States of Ohio, Kentucky and perhaps others, in which the rule seems to obtain that while the master is not liable to his servant for any injury committed by a servant of equal degree in the same sphere of employment, unless some negligence is fixed on the master personally, yet that he is liable for the gross negligence of a servant superior in rank to the person injured, and is also liable for the ordinary negligence of a servant not engaged in the same department of service.

Leaving the decisions of the state courts, and coming to those of this court, we find the latter to be in substantial harmony with the current of authority in the state and English courts. From this statement the case of *Chicago, Milwaukee & St. Paul Railroad* v. *Ross*, 112 U. S. 377, must, perhaps, be excepted, and to it we shall revert after an examination of our other cases.

*Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478, was the case of an action in the Circuit Court of the United States for the District of West Virginia against a railroad corporation by a brakeman in its employ for personal injuries received, while working a switch, by being struck by one of its locomotive engines; and it was unanimously held by this court, affirming the court below, that the plaintiff could not recover, although the injury was occasioned by the negligence of the engineman in running his engine too fast, or not giving due notice of its approach. In the course of the opinion, which was pronounced by Mr. Justice Gray, he said :

" The general rule of law is now firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment. This court has not hitherto had

occasion to decide who are fellow servants within the rule. . . . Nor is it necessary, for the purposes of this case, to undertake to lay down a precise and exhaustive definition of the general rule in this respect, or to weigh the conflicting views which have prevailed in the courts of the several States; because persons standing in such a relation to one another as did the plaintiff and the engineman of the other train are fellow servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the House of Lords, and in the English and Irish courts, as is clearly shown by the cases cited in the margin. They are employed and paid by the same master. The duties of the two bring them to work at the same place at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object — the moving of the trains."

*Northern Pacific Railroad* v. *Herbert,* 116 U. S. 642, was a case wherein it appeared that a brakeman suffered an injury by reason of the fact that the brakes which he was called upon to apply were broken and out of order, and it was held, *per* Mr. Justice Field, that it was the duty of the company to furnish sufficient and safe materials, machinery or other means by which service is to be performed, and to keep them in repair and order, and that as this duty had not been fulfilled the plaintiff was entitled to recover. There was another question in that case as to the import and effect of a statute of Dakota, in which Territory the accident took place, providing that "an employer is not bound to indemnify his employé for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employé," and that "an employer must, in all cases, indemnify his employé for losses caused by the former's want of ordinary care."

It was held, by a majority of the court, that these provisions

of the Dakota code expressed the general law that an employer is responsible for the injury to his employés caused by his own want of ordinary care; that his selection of defective machinery, which is to be moved by steam power, is of itself evidence of a want of ordinary care, and allowing it to remain out of repair, when its condition is brought to his notice, or by proper inspection might be known, is culpable negligence; that the cars, in that case, had been defective for years; that the brakes were all worn out, and their condition had been called to the attention of the yard master, who had control of them while in the yard, and might have been ascertained, upon proper inspection, by the officer or agent of the company charged with the duty of keeping them in repair, yet nothing was done to repair either brakes or cars; that, in such circumstances, the company had not exercised ordinary care to keep the cars and brakes in good condition; and that, therefore, under the provisions of the statute, the company was bound to indemnify the plaintiff. The minority of the court considered that the case was governed by the local statute, and that the statute, properly construed, relieved the employer, under the facts of the case, from liability to the injured employé. They declined to express any opinion upon the question of liability apart from the statute.

*Quebec Steamship Co.* v. *Merchant,* 133 U. S. 375, was an action brought in the Circuit Court of the United States for the Southern District of New York by one Merchant, who was employed as a stewardess of the steamship Bermuda, belonging to the defendant company. It appeared that the ship's company consisted of thirty-two persons, divided into three classes of servants, called three departments — the deck department, the engineers' department, and the steward's department. The captain, the first and second officers, the purser, the carpenter and the sailors were in the deck department; the engineers, the firemen and the stokers were in the engineers' department; the steward, the waiters, the cooks, the porter and the stewardess were in the steward's department. At the close of the evidence the defendant's counsel requested the court to charge the jury to find a verdict for the defendant on the ground that the injury sustained by the plaintiff was occasioned, if there was

any negligence, by the negligence of a fellow servant. This the court refused to do. There was a verdict for the plaintiff, and the case was brought to this court. Here it was contended that, as the carpenter whose negligence was alleged as the cause of the accident, was in the deck department, and the stewardess in the steward's department, those were different departments in such a sense that the carpenter was not a fellow servant with the stewardess. But Mr. Justice Blatchford, speaking for the entire court, said:

" The injuries to the plaintiff were caused solely by the negligence of one or the other of two fellow servants who were in a common employment with her, and there was no violation or omission of duty on the part of the employer contributing to such injuries. Neither of her fellow servants stood in such relation to her or to the work done by her, and in the course of which her injuries were sustained, as to make his negligence that of the employer. The case, therefore, falls within the well settled rule, as to which it is unnecessary to cite cases, which exempts an employer from liability for injuries to a servant by another servant, and does not fall within any exception to that rule which destroys the exemption of the employer when his own negligence contributes to the injury, or when the other servant occupies such a relation to the injured party or to his employment, in the course of which her injury was received, as to make the negligence of such servant the negligence of the employer."

The next notable case is that of *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, in which it was held that an engineer and fireman of a locomotive, running alone and without any train attached, were fellow servants of the company, so as to preclude the latter from recovering from the company for injuries caused by the negligence of the former. In the course of the opinion Mr. Justice Brewer said:

" It may safely be said that this court has never recognized the proposition that the mere control of one servant over another in doing a particular piece of work destroys the relation of fellow servants and puts an end to the master's liability. On the contrary, all the cases proceed on the ground of some

breach of positive duty resting upon the master, or upon the idea of superintendence or control of a department.  It has ever been affirmed that the employé assumes the ordinary risks incident to the service; and, as we have seen, it is as obvious that there is risk from the negligence of one in immediate control as from one simply a coworker.  That the running of an engine by itself is not a separate branch of service seems perfectly clear.  The fact is, all the locomotive engines of a railroad company are in the one department, the operating department; and those employed in running them, whether as engineers or firemen, are engaged in a common employment and are fellow servants."

·   We shall have occasion to revert to this case when we come to consider the decision in *Chicago, Milwaukee & St. Paul Railroad* v. *Ross.*

In *Northern Pacific Railroad* v. *Hambly,* 154 U. S. 349, it was held that a common day laborer in the employ of a railroad company, who, while working for the company under the order and direction of a section boss or foreman, on a culvert on the line of the company's road, receives an injury by and through the negligence of the conductor and of the engineer in moving and operating a passenger train upon the company's road, is a fellow servant with such engineer and such conductor, in such a sense as exempts the railroad company from liability for the injury so inflicted; and Mr. Justice Brown, in delivering the opinion of the court, observed :

" To hold the principal liable whenever there are gradations of rank between the person receiving and the person causing the injury, or whenever they are employed in different departments of the same general service, would result in frittering away the whole doctrine of fellow service.  Cases arising between persons engaged together in the same identical service, as, for instance, between brakemen of the same train, or two seamen on the same ship, are comparatively rare.  In a large majority of cases there is some distinction either in respect to grade of service, or in the nature of the employments.  Courts, however, have been reluctant to recognize these distinctions unless the superiority of the person causing

the injury was such as to put him rather in the category of principal than of agent, as, for example, the superintendent of a factory or railway, and the employments were so far different that, although paid by the same master, the two servants were brought no further in contact with each other than as if they had been employed by different principals."

In *Central Railroad Co.* v. *Keegan,* 160 U. S. 259, *Baltimore & Ohio Railroad Co.* v. *Baugh* was approved and followed in respect to its statement as to what constitutes a vice-principal.

In *Northern Pacific Railroad Co.* v. *Peterson,* 162 U. S. 346, an action had been brought in the Circuit Court of the United States for the District of Minnesota by Peterson to recover damages against the railroad company, alleged to have been caused by the negligence of the foreman of a gang of laborers, engaged in putting in repair sections of the railroad. The foreman had power to hire and discharge the hands who composed the gang, and had exclusive charge of their direction and management in all matters connected with their employment. The plaintiff recovered a verdict, and the judgment of the Circuit Court thereon was affirmed by the Circuit Court of Appeals of the Eighth Circuit. The cause was brought to this court, and the judgments of the courts below were reversed. The opinion of this court was by Mr. Justice Peckham, in which he reviewed the authorities, and expressed the following conclusions:

" The general rule is, that those entering into the service of a common master become thereby engaged in a common service and are fellow servants, and, *prima facie,* the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasona-

bly safe and competent men to perform their respective duties, and it has been held in many States that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters it is a neglect of a duty which he personally owes to his employés, and if the employé suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such. . . . The rule is that, in order to form an exception to the general law of non-liability, the person whose neglect caused the injury must be one who was clothed with the control and management of a distinct department, and not a mere separate piece of work in one of the branches of service in a department. This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case.

· "When the business of the master or employer is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may properly be considered, with respect to employés under them, vice-principals and representatives of the master as fully and as completely as if the entire business of the master were placed by him under one superintendent. . . . This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sections, aiding and assisting the regular gang of workmen upon each section, as occasion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master, as would be necessary to

render the master liable to a coemployé for his neglect. He was in fact, as well as in law, a fellow workman; he went with the gang to the place of work in the morning, stayed there with them during the day, superintended their work, giving directions in regard to it, and returned home with them in the evening, acting as a part of the crew of the hand car upon which they rode. The mere fact, if it be a fact, that he did not actually handle a shovel or a pick, is an unimportant matter. Where more than one man is engaged in doing any particular work, it becomes almost a necessity that one should be boss and the other subordinate, but both are nevertheless fellow workmen."

The last case we shall refer to is that of *Oakes* v. *Mase*, 165 U. S. 363, where it was declared to be the settled law of this court that the relation of fellow servants exists between an engineer, operating a locomotive on one train, and the conductor on another train on the same road; and *Northern Pacific Railroad* v. *Poirier*, 167 U. S. 48, where it was held that a brakeman on a regular train of a railroad and the conductor of a wild train, on the same road, are fellow servants, and the railroad company is not responsible for injuries happening to the former by reason of a collision of the two trains, caused by the negligence of the latter and by his disregard of the rules of the company.

Without attempting to educe from these cases a rule applicable to all possible circumstances, we think that we are warranted by them in holding in the present case that, in the absence of evidence of special and unusual powers having been conferred upon the conductor of the freight train, he, the engineer, and the brakemen, must be deemed to have been fellow servants within the meaning of the rule which exempts the railroad company, their common employer, from liability to one of them for injuries caused by the negligence of another.

This conclusion is certainly sound unless we are constrained to hold otherwise by the decision in *Chicago, Milwaukee & St. Paul Railroad* v. *Ross,* already referred to. That was a case wherein an action was maintained, brought by a locomo-

tive engineer to recover damages received in a collision caused by the negligence of the conductor of the train; and it must be admitted that the reasoning employed by Mr. Justice Field, in his opinion expressing the views of a majority of the court, and the conclusion reached by him, cannot be reconciled with the other decisions of this court hereinbefore cited. We do not think that it would be proper to pass by the case without comment, nor yet to attempt to distinguish it by considerations so narrow as to leave the courts below in uncertainty as to the doctrine of this court on a subject so important and of such frequent recurrence. The case in hand exemplifies the perplexity caused by the *Ross case.* The trial court gave effect to it as establishing the proposition that the conductor of an ordinary freight train, with no other powers than those assumed to belong to such an employé by virtue of such a position, is a vice-principal, against whose negligence the company is bound to indemnify all the other employés on the train. Yet it is evident that the judges of the Circuit Court of Appeals did not find themselves able to either accept or reject such a proposition, as they have certified it to us as one on which they desire our instructions. Such a course plainly evinces doubts whether, in view of the decisions both before and since, the case of *Chicago, Milwaukee & St. Paul Railroad* v. *Ross* furnishes a safe and approved rule to guide the trial courts.

While the opinion in the *Ross case* contains a lucid exposition of many of the established rules regulating the relations between masters and servants, and particularly as respects the duties of railroad companies to their various employés, we think it went too far in holding that a conductor of a freight train is, *ipso facto*, a vice-principal of the company. An inspection of the opinion shows that that conclusion was based upon certain assumptions, not borne out by the evidence in the case, as to the powers and duties of conductors of freight trains. Thus it was said :

" We know from the manner in which railroads are operated that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and man-

agement of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the terms is he a fellow servant with the fireman, the brakemen, the porters and the engineer; the latter are fellow servants in the running of the train under his direction; as to them and the train, he stands in the place of and represents the corporation."

We think these statements attribute duties and powers to conductors of freight trains much greater than ordinarily exist. Several of the instances of control assigned to the conductor really belong to the engineer, who, as railroads are now operated, is a much more important functionary in the actual movements of the train, when in motion, than the conductor. It is his hand that regulates the application of the brakes that control the speed of the train, and in doing so he acts upon his own knowledge and observation, and not upon orders of the conductor. Particularly has this become the case since the introduction of the air train-brake system. We can take notice of the act of March 2, 1893, c. 196, 27 Stat. 531, which enacted "that it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power-driving wheel brake and appliances for operating the train-brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train-brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand-brake for that purpose." We do not refer to this statute as directly applicable to the case in hand,-but as a legislative recognition of the dominant position of the engineer.

Cases are cited in the opinion in the *Ross case* in which it has been held by the Supreme Court of Ohio and by the Court of Appeals of Kentucky that railroad companies are responsible for negligence of conductors to other employés.

But those courts do not accept the ordinary rule exempting the master from liability to a servant for the negligent conduct of his fellows. At least, they do not apply such a rule to the extent that this and other courts have done. They hold that no service is common that does not admit a common participation, and no servants are fellow servants when one is placed in control over the other.

In so far as the decision in the *case of Ross* is to be understood as laying it down, as a rule of law to govern in the trial of actions against railroad companies, that the conductor, merely from his position as such, is a vice-principal, whose negligence is that of the company, it must be deemed to have been overruled, in effect if not in terms, in the subsequent case of *Baltimore & Ohio Railroad* v. *Baugh,* before cited. There Mr. Justice Brewer, in commenting upon the proposition applied in the *Ross case,* that the conductor of a train has the control and management of a distinct department, said :

" But the danger from the negligence of one specially in charge of the particular work is as obvious and as great as that of those who are simply coworkers with him in it. Each is equally with the other an ordinary risk of the employment. If he is paid for the one, he is paid for the other; if he assumes the one, he assumes the other. Therefore, so far as the matter of the master's exemption from liability depends upon whether the negligence is one of the ordinary risks of the employment, and, thus, assumed by the employé, it includes all coworkers to the same end, whether in control or not. But if the fact that the risk is or is not obvious does not control, what test or rule is there which determines? Rightfully this, there must be some personal wrong on the part of the master, some breach of positive duty on his part. If he discharges all that may be called positive duty, and is himself guilty of no neglect, it would seem as though he was absolved from all responsibility, and that the party who caused the injury should be himself alone responsible. It may be said that this is only passing from one difficulty to another, as it leaves still to be settled what is positive duty and what is personal neglect; and yet if we analyze these matters a little, there will appear less diffi-

culty in the question. Obviously, a breach of positive duty is personal neglect; and the question in any given case is, therefore, what is the positive duty of the master? He certainly owes the duty of taking fair and reasonable precautions to surround his employé with fit and careful coworkers, and the employé has a right to rely on his discharge of this duty. If the master is careless in the matter of employing a servant, it is his personal neglect; and if without proper care in inquiring as to his competency he does employ an incompetent person, the fact that he has an incompetent, and therefore an improper employé is a matter of his personal wrong, and owing to his personal neglect. And if the negligence of this incompetent servant works injury to a co-servant, is it not obvious that the master's omission of duty enters directly and properly into the question of responsibility? If, on the other hand, the master has taken all reasonable precautions to inquire into the competency of one proposing to enter into his service, and as the result of such reasonable inquiry is satisfied that the employé is fit and competent, can it be said that the master has neglected anything, that he has omitted any personal duty? And this notwithstanding that after the servant has been employed it shall be disclosed that he was incompetent and unfit? If he has done all that reasonable care requires to inquire into the competency of his servant, is any neglect imputable to him? No human inquiry, no possible precaution, is sufficient to absolutely determine in advance whether a party under certain exigencies will or will not do a negligent act. So it is not possible for the master, take whatsoever pains he may, to secure employés who will never be guilty of any negligence. Indeed, is there any man who does not sometimes do a negligent act? Neither is it possible for the master, with any ordinary and reasonable care, always to secure competent and fit servants. He may be mistaken, notwithstanding the reasonable precautions he has taken. Therefore, that a servant proves to be unfit and incompetent, or that in any given exigency he is guilty of a negligent act resulting in injury to a fellow servant, does not of itself prove any omission of care on the part of the master in his employment; and

it is only when there is such omission of care that the master can be said to be guilty of personal wrong in placing or continuing such servant in his employ, or has done or omitted aught justifying the placing upon him responsibility for such employé's negligence.

"Again, a master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools and the machinery, owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guarantee of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor. But it may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing

safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is as fully discharged, when reasonable precautions have been taken to place fit and competent persons in charge. Neither duty carries with it an absolute guaranty. Each is satisfied with reasonable effort and precaution."

Accordingly, the conclusion reached was that, although the party injured was a fireman, who was subject to the orders and control of the engineer, in the absence of any conductor, there was no liability on the company for negligence of the *ad interim* conductor.

That this reasoning and conclusion were inconsistent with those in the *Ross case* is not only apparent on comparing them, but further appears in the dissenting opinion in *The Baugh case* of Mr. Justice Field, who was the author of the opinion in the case of Ross. He said:

" The opinion of the majority not only limits and narrows the doctrine of the *Ross case*, but, in effect, denies, even with the limitations placed by them upon it, the correctness of its general doctrine, and asserts that the risks which an employé of a company assumes from the service which he undertakes is from the negligence of one in immediate control, as well as from a coworker, and that there is no superintending agency for which a corporation is liable, unless it extends to an entire department of service. A conclusion is thus reached that the company is not responsible in the present case for injuries received by the fireman from the negligent acts of the conductor of the engine. . . . The principle in the *Ross case* covers this case, and requires, in my opinion, a judgment of affirmance."

So likewise Mr. Chief Justice Fuller dissented in *The Baugh case* for the express reason that, in his opinion, the case came within the rule laid down in *Chicago, Milwaukee & St. Paul Railroad* v. *Ross.*

To conclude, and not to subject ourselves to our own previous criticism, of proceeding upon assumptions not founded on

the evidence in the case, we shall content ourselves by saying that, upon the facts stated and certified to us by the Judges of the Circuit Court of Appeals, we cannot, as a matter of law based upon those facts and upon such common knowledge as we, as a court, can be supposed to possses, hold a conductor of a freight train to be a vice-principal within any safe definition of that relation.

*Accordingly we answer the first question put to us in the affirmative, and the second question in the negative.*

MR. JUSTICE HARLAN dissenting.

I concurred in the opinion and judgment of this court in *Chicago & Milwaukee Railroad* v. *Ross*, 112 U. S. 377, and do not now perceive any sound reason why the principles announced in that case should not be sustained. In my judgment the conductor of a railroad train is the representative of the company in respect of its management, all the other employés on the train are his subordinates in matters involved in such management, and for injury received by any one of those subordinates during the management of the train by reason of the negligence of the conductor the railroad company should be held responsible. As the conductor commands the movements of the train and has general control over the employés connected with its operation, the company represented by him ought to be held responsible for his negligence resulting in injury to other employés discharging their duties under his immediate orders. If in such case the conductor be not a vice-principal, it is difficult to say who among the officers or agents of a corporation sued by one of its employés for personal injuries ought to be regarded as belonging to that class. Having these views, I am compelled to withhold my assent from the opinion and judgment in this case.