GULF TRANSIT CO. v. GRANDE.

(Circuit Court of Appeals, Fifth Circuit. April 26, 1915.)

No. 2744.

1. SEAMEN ⟶29—LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

A gangwayman, employed by a stevedoring company to direct the movements of the winchman in loading bales of cotton into the hold of a steamship, and libelant, who was employed in stowing the cotton, *held* fellow servants, and the employer not liable for an injury to libelant, caused by a premature order to the winchman.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ⟶29.]

2. MASTER AND SERVANT ⟶107—MASTER'S LIABILITY FOR INJURY TO SERVANT—PLACE TO WORK.

While it is the primary duty of the master to use reasonable care to provide the servant with a safe place in which to work, when that has been done, he is not liable for an unsafe condition resulting from the manner in which the workmen carry on their work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. ⟶107.]

Appeal from the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Suit in admiralty by Odin P. Grande against the Gulf Transit Company. Decree for libelant, and respondent appeals. Reversed.

A libel was filed by Odin P. Grande against the appellant, incorporated as stevedores, to recover damages for personal injuries. The cause of action was stated by the libelant as follows:

"1. That on March 30, A. D. 1912, the British steamship Penlee was lying alongside Commendencia Street wharf in the bay of Pensacola, in the Northern district of Florida, receiving a cargo into the hold of said steamship by means

of a certain derrick, winch, and other tackle; that said winch and derrick were upon the deck of said vessel and used in connection with the cable, one end of which was attached to a bale of cotton upon said wharf, and by means of said winch and derrick hoisted from said wharf over the side of said steamship and then lowered into the hold of said steamship and there stowed.

"2. That on the date aforesaid respondent, the Gulf Transit Company, a corporation, through and by its agents and servants, was engaged in loading said cargo of cotton bales from its said wharf into the hold of said steamship as hereinbefore alleged.

"3. That on the date aforesaid libelant, Odin P. Grande, was employed by respondent as its agent and servant in the hold of said steamship, whose duty it was to stow said cotton after same had been lowered into said hold in the manner aforesaid.

"4. That while in the hold of said steamship, in the discharge of his duty to respondent as aforesaid, libelant, and respondent's other employés working with libelant, could not see out upon the deck of the said steamship, or observe bales of cotton as they were lowered from said wharf over the side of said steamship, and lowered into the hold of said steamship, until after same had been hoisted to a point directly over the hold of said steamship, because libelant and his coemployés working in the hold of said steamship as aforesaid were many feet below the deck of said steamship, and were covered by the deck of said steamship, except as to the hatchway; that the work at which the libelant and his coemployés were employed by respondent was arduous and exacting, and that libelant, as well as his coemployés, were required to concentrate their attention upon the work directly in hand; that defendant's winchman, engaged in operation of the winch aforesaid, used for hoisting and lowering bales of cotton as aforesaid, was required to be upon the deck of said steamship near the winch, and while there in the discharge of his duties the respondent's said winchman could not see into the hold of said steamship, and could not see libelant and his coemployés, as they were engaged in the discharge of their duties as aforesaid; that said bales of cotton were large, bulky, and weighed between 400 and 500 pounds each; that because libelant and his coemployés could not see said bales of cotton until they were hoisted to a point directly over the hatchway, and because they had their attention concentrated upon the work directly in hand, and because the winchman aforesaid could not see libelant and his coemployés working in the hold of said steamship, the manner of loading said bales of cotton in said steamship as aforesaid was highly dangerous to libelant and his coemployés, and their lives and safety were constantly in jeopardy.

"5. That it became and was the duty of respondent to libelant to observe due care and diligence to provide libelant with a reasonably safe place in which to work, and in which to discharge his duties to respondent, as aforesaid; that in the discharge of this duty to libelant it became and was respondent's duty to provide a man, whose duty it was to stand upon the deck of said steamship, near the hatchway aforesaid, there to be and remain, and to observe the movement of said cotton in bales, as same was hoisted aboard said steamship from said wharf and lowered into the hold of said steamship, and to give proper and timely warning and signals to the winchman, so that said bales of cotton could be hoisted and lowered into the hold of said steamship with safety to libelant and his coemployés; that this was the positive duty of respondent, and that in discharging said duty respondent's said employé was engaged in discharging a duty which respondent owed directly to libelant and his coemployés, and that said duty was nondelegable.

"6. That on the date aforesaid, while the libelant was working in the hold of said steamship, stowing cotton, as he was employed by respondent to do as aforesaid, the man whom respondent provided and placed on the deck of said steamship for the purpose of giving due and timely signals to the winchman for hoisting and lowering said bales of cotton as aforesaid suddenly, and without warning to libelant, carelessly and negligently signaled the winchman aforesaid to lower away on the bales of cotton, with which signal the said winchman then and there complied, and as a result thereof the said bales of cotton, large and bulky and weighing between 400 and 500 pounds each, forcibly

and violently fell upon libelant, thereby giving to and inflicting upon libelant divers and sundry wounds," etc.

Upon the hearing the court rendered a decree in favor of the libelant for $200, from which the respondent has appealed to this court.

W. A. Blount, A. C. Blount, Jr., and F. B. Carter, all of Pensacola, Fla., for appellant.

John P. Stokes and R. P. Reese, both of Pensacola, Fla., for appellee.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge (after stating the facts as above). [1] It is conceded by counsel that the injuries of the appellee resulted from the negligence of the gangwayman in prematurely giving a signal to the winchman to lower the cotton. And the only question to be determined is whether the appellee and gangwayman were fellow servants, within the rule which exempts the master from liability for the negligence of one servant resulting in injury to another of the same class. They were both employed by appellant, which was, quoad the ship, an independent contractor. They were engaged in a common employment in the same department of service, and both received orders from the same employer. The gangwayman had no control over the appellee; his duty being simply to signal the winchman when to hoist the cotton and lower it in the hold of the ship. The winch and other appliances were in good condition, and there is no claim that the gangwayman was an incompetent servant. Counsel for the appellee insist that it was the duty of the appellant to exercise reasonable care in providing him with a safe place to work, and that the negligence of the gangwayman in giving the signal prematurely to the winchman rendered the place unsafe, and hence for the resulting injuries to him the appellant is liable in damages.

This position of counsel is opposed by the decided weight of authority, and to it we are unable to give our assent. That the appellee and the gangwayman were fellow servants, and that the appellant was not responsible for the negligent acts of the gangwayman in carrying on the work, clearly appears from the two cases of New England R. R. Co. v. Conroy, 175 U. S. 327, 20 Sup. Ct. 85, 44 L. Ed. 181, and Kreigh v. Westinghouse, 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984. The former case, in which the court declined to follow Railway Company v. Ross, cited below, announces a rule to guide us in determining who are fellow servants. At page 328 of 175 U. S., at page 86 of 20 Sup. Ct. (44 L. Ed. 181), the court said:

"Unless we are constrained to accept and follow the decision of this court in the case of Chicago, Milwaukee & St. Paul Railway Co. v. Ross, 112 U. S. 377 [5 Sup. Ct. 184, 28 L. Ed. 787], we have no hesitation in holding, both upon principle and authority, that the employer is not liable for an injury to one employé, occasioned by the negligence of another engaged in the same general undertaking; that it is not necessary that the servants should be engaged in the same operation or particular work; that it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to

perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end."

[2] Referring to the duty of the master to provide his employés with a safe place to work and to his responsibility for injuries resulting from the place becoming unsafe through the negligence of laborers in the manner of conducting the work, it was said by the court in Kreigh v. Westinghouse, 214 U. S. at pages 255, 256, 29 Sup. Ct. at page 621 (53 L. Ed. 984):

"The duty of the master to use reasonable diligence in providing a safe place for the men in his employ to work in and to carry on the business of the master for which they are engaged has been so frequently applied in this court, and is now so thoroughly settled, as to require but little reference to the cases in which the doctrine has been declared. Baltimore & Potomac R. R. Co. v. Mackey, 157 U. S. 72, 87 [15 Sup. Ct. 491, 39 L. Ed. 624]; Union Pacific R. R. Co. v. O'Brien, 161 U. S. 451 [16 Sup. Ct. 618, 40 L. Ed. 766]; Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64 [24 Sup. Ct. 24, 48 L. Ed. 96]. The employé is not obliged to examine into the employer's methods of transacting his business, and he may assume, in the absence of notice to the contrary, that reasonable care will be used in furnishing appliances necessary to carrying on the business. Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64, 68 [24 Sup. Ct. 24, 48 L. Ed. 96]. But while this duty is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he, the master, has discharged his primary duty of providing a reasonably safe appliance and place for his employés to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow workmen. Armour v. Hahn, 111 U. S. 313 [4 Sup. Ct. 433, 28 L. Ed. 440]; Perry v. Rogers, 157 N. Y. 251 [51 N. E. 1021]."

The case of Ocean Steamship Co. v. Cheeney, 86 Ga. 278, 284, 12 S. E. 351, appears to be peculiarly applicable to the case at bar. Referring to the hatch tender whose negligence resulted in injuries to one of his colaborers, it was said by the court at page 283 of 86 Ga., at page 351 of 12 S. E.:

"The hatch tender was usually the engine driver, or one of the hands employed to assist in loading the vessel. It appears that no special person was designated for this service, but that the hatch tender 'was taken indifferently from the laborers.' He was engaged by the company in the same business that all the other hands of the gang were engaged in, to wit, the loading of the vessel with freight. He was therefore a coemployé with the other persons engaged in this business; and if, when stationed at the hatchway for the purpose of giving notice to the hands below, he failed to give that notice, or if he absented himself from the hatchway, and, while absent, some other person engaged in the business threw the bale down into the hold without notice to those below, and the plaintiff was thereby injured, it was in consequence of the negligence of a coemployé, and under the law he cannot recover for such negligence. We do not think it makes any difference whether the bale was thrown down when the hatch tender was present and failed to give notice, or whether in his absence some other coemployé threw the bale down. In either case it would be the negligence of a coemployé. It would be the negligence of the hatch tender in not giving notice, or in absenting himself from the hatchway, or, in case it was done in the hatch tender's absence, the negligence of some other coemployé in throwing the bale down without notice."

It seems useless to multiply authorities touching a question which has been definitely decided by the Supreme Court. The case of Standard Oil Company v. Brown, 218 U. S. 78, 30 Sup. Ct. 669, 54 L. Ed. 939, relied upon by the appellee, is thought not to be in point. The facts of the Brown Case clearly distinguish it from the case before the court, and it would be a useless consumption of time to point out their differing features. Our conclusion is that the gangwayman was a fellow servant of the appellee, and hence for his negligence no recovery can be had against the appellant.

The decree should be reversed, and the cause remanded, with directions to the trial court to enter a decree dismissing the libel. So ordered.