DELAWARE, L. & W. R. CO. v. ROYCE.

(Circuit Court of Appeals, Second Circuit. February 8, 1910.)

No. 127.

1. MASTER AND SERVANT (§§ 101, 102*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DUTY WITH RESPECT TO MACHINERY.

The master does not insure the servants against defects in or breakdown of his machinery or appliances, but all that the law imposes on him is the duty to exercise reasonable care to make and maintain them safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 171–181; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

A guide for one of the crossheads on a locomotive drawing a train was lost, and as the train lay on a siding the conductor reported the loss to the train dispatcher and procured another engine to help the train in, but did not report it to the superintendent, as required by the rules of the company. The engineer negligently failed to disconnect the disabled side of the engine while it was being moved, and the driving rod became disconnected, with the result that plaintiff, who was a brakeman stationed in that side of the cab, was injured. Prior to the loss of the guide, the engine was in good repair. Held, that defendant railroad company was not chargeable with notice of the dangerous condition of the engine, but that the negligence which caused plaintiff's injury was that of the engineer or conductor, who were his fellow servants, for which defendant was not responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Joseph M. Royce against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

F. W. Thomson, for plaintiff in error.

Hatch & Clute (Edward S. Hatch and Vincent P. Donihee, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. March 1, 1907, plaintiff was brakeman on a coal train of the defendant en route from Scranton, Pa., to Hoboken, N. J., which according to schedule ran into a siding near Waterloo Station, N. J. It was there discovered that the upper guide on the left side of the engine had dropped off. The piston which is driven forward and back by the cylinder or steam chest is attached at its outer end to one side of a block of steel called a "crosshead," to the other side of which the driving rod of the driving wheel is attached. The crosshead moves forward and back between two parallel horizontal guides; the upper one being lost on this occasion. Thereupon the conductor, after consultation with the engineer, called up the office of the

chief train dispatcher at Hoboken, and delivered the following message over the telephone.

"Engine 866 is at Waterloo Siding, and we have lost our top guide; if you send us a pusher we can bring our train in all right."

The engine was of the type known as "Mother Hubbard"; the cab being right over the boiler and fastened to it, leaving a place for the engineer to stand on the right side and for a brakeman on the left. A pusher was promptly sent, and the train proceeded with the intention of leaving the engine for repairs at the Port Morris yard; but in entering the yard the driving rod became disconnected, struck the floor of the cab, and loosened one of the bolts which held it to the boiler, from which steam escaped, seriously injuring the plaintiff, who was on the left side of the cab.

The only error assigned that need be considered is the refusal of the trial judge to direct a verdict for the defendant. He did so on the ground that the engineer upon the happening of the first accident to the engine became the alter ego of the defendant, and he left it to the jury to determine whether the engineer did what he ought not to have done, or left undone what he ought to have done, in respect to the disabled engine.

The following rules of the company were offered in evidence:

461. "All irregularities such as derailment, breaking of cars, defect in cars or engines; defective condition of bridges or track; failure in water supply, and unusual detention of trains must be promptly reported by conductors to the superintendent."

360. "Chief train dispatchers will report to the superintendent. In matters relating to the management of telegraph lines they will also report to the superintendent of telegraph."

361. "They are in charge of the movement of trains; of the local distribution of cars and of the operation of telegraph lines on their respective divisions. They are also in charge of the train dispatchers, telegraph operators and linemen. * * *"

366. "They must keep constantly and closely informed as to the location and progress of all trains, require prompt reports of their departure, and, when necessary, of their arrival, from all open telegraph offices, and see that all such reports are entered upon the train sheet. Causes of delay must be immediately ascertained, and, if possible, remedied."

The master does not insure the servants against defects in or breakdown of his machinery and appliances. All the law imposes on him is the duty to exercise reasonable care to make and maintain them safe. When it is said that the master cannot delegate this duty, no more is meant than that this reasonable degree of care must be exercised either by himself or by those who stand in his place. No antecedent negligence was alleged as to the engine. Indeed, the proofs established that it was originally fit, was kept in repair, and regularly inspected. Therefore, if the defendant failed of its duty to the plaintiff, it did so at the time the loss of the upper guide was discovered. The jury having found that the engine was unfit, and that it was negligence to proceed with it, the question arises whether this negligence was that of the defendant as master or of the plaintiff's fellow servants. The conductor and engineer were, as such, certainly his fellow servants. Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37

L. Ed. 772; New England R. R. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. Notice to them was not notice to the defendant as master. The defendant had prescribed reasonable rules applying to the situation. The conductor, as the head of the crew, was required to communicate to the superintendent, who was the alter ego of the defendant; but he neglected to do so. He reported to the chief train dispatcher, another alter ego, but only in respect to the location and movement of the train. It is, therefore, plain that the defendant as master had no notice that the engine, originally fit, kept in good order, and regularly inspected, had broken down. Although the report to the chief train dispatcher stated that the upper guide had been lost, this was done merely to explain the delay. Even if the train dispatcher knew or thought the defect was one likely to make it dangerous to proceed with the engine in that condition, he had a right to suppose that the engineer had disconnected the disabled side, as the proofs show he could perfectly well have done. The purpose of the message was to get from the train dispatcher the remedy which the conductor applied to the situation, namely, the pusher, and this was promptly supplied.

The record disclosing no evidence of negligence on the part of the defendant as master, the judgment is reversed.