The plaintiff's intestate was a car repairer in the employment of the defendant at their freight depot at Suspension Bridge, and the injuries which caused his death were received while engaged in that capacity in the freight yard of the defendant. When the cars came in on the road in conformity with the usual practice, they were placed on a track known as the repair track for inspection, and there examined, and if proved to be out of repair were put in order. This was done on the track, unless the defect was of such a nature as to render it necessary to send the cars to the *Page 173 
car shop. The cars as soon as repaired were taken away from the track where they stood by an engine which was attached and then distributed upon the different tracks, some twelve in all, as required. The deceased was under a car, which was at the extreme western end of some forty-nine cars, engaged in the performance of his duty, and while there, an engine attached to the eastern end of the train started to draw off such of the cars as had been repaired, which were disconnected from the remainder, and one of which latter cars the deceased was engaged in repairing. When about three car lengths from the standing portion of the train, a section consisting of several cars parted by the breaking of a coupling pin, and the grade being descending the cars ran back against the standing cars causing them to move about half the length of a car, and deceased was run over receiving injuries from which he died the following day.
Recent adjudications in this State have gone very far toward settling the law as to the liability of railroad corporations for injuries occasioned to employees engaged in the service of these corporations, occasioned by the negligence of their fellow servants. The duty and implied contract of the corporation with its servants is, that it will furnish proper machinery or other materials and appliances necessary for the work to be performed, and shall employ competent and skilful fellow servants, and shall use reasonable care to that end. This duty necessarily implies that a sufficient number of workmen shall be engaged, and that those occupying positions over others shall be qualified, competent and skilful, and see that their subordinates attend to and perform the duty devolving upon them. Where there is a general agent or superintendent having the management or control of any particular department or branch of the business, such agent or officer takes the place of the corporation, and any neglect or omission of duty in respect to his employees, is the act of the master for which the latter is responsible. (Laning
v. The N.Y.C.R.R. Co., 49 N.Y., 533; Flike v. The B. A.R.R. Co., 53 N.Y., 549.) *Page 174 
These cases will serve to illustrate the application of the rule referred to. In the Laning case, the defendant was held liable for the negligence of its agent, who was charged with the duty of employing subordinates, in retaining a foreman of intemperate habits in charge of work, by reason of which the plaintiff was injured. In the Flike case, the evidence showed that there was a deficiency of brakemen upon the train, which caused the accident, and that the head conductor, whose business it was to make up the train and line and station the brakemen, had failed to provide a sufficient number; and it was held that the defendant was liable for his negligence and want of care. The rule is laid down in the case last cited that the corporation is liable for negligence or a want of proper care in respect to such acts and duties as it is required to perform as master, or principal, without regard to the rank or title of the agent entrusted with their performance; that the agent takes the place of the corporation, and the company must be deemed present and is liable for the manner in which his acts are performed. If he employs unfit servants, the company is liable, as well as for not employing enough help, or not requiring their presence. Applying the rules stated to the case considered, the question arises whether the defendant had taken such reasonable precaution to guard against the accident which occurred as was required.
No claim is made that a sufficient number of men were not employed, and that they were not competent and well qualified to discharge their respective duties, but the negligence imputed is that a sufficient number of brakemen were not on the detached train engaged in the work of running it from the repair track, and in distributing the cars, and that none was at the rear end of the train. Had a brakeman been stationed at the end of the moving train, he would perhaps have been effective in arresting the train and thus prevented the accident. Whether the omission to station the required number of brakemen upon the cars detached, and one in the rear, was negligent is the question to be determined. It does *Page 175 
not appear that there were any general regulations in regard to the duties to be performed in examining, repairing and moving the cars as to placing brakemen there, or that such regulations were really required, or if made could have been effectually carried out so as to carry on the business and manage and conduct the cars more systematically and safely than actually was done by those who were engaged for that purpose. The train was manned by an engineer, fireman, a head brakeman and three other brakemen. No claim is made that all the employees who had anything to do with the repairing or running of the cars in the freight-yard were not experienced and skillful men well fitted for the business in which they were engaged. While all aided in some portion of the work, upon no one of them devolved the particular duty of providing the men for any special purpose. The work was irregular and could not be arranged with that nicety and exactness which can conveniently be applied in the running of regular trains upon a railroad. The yard-master had general charge of the yard with an assistant who took his place at night. It does not appear that he was negligent in any respect or that he occupied the place of the corporation in the distributing and removal of the cars, and there was no evidence showing that he failed to perform any duty which he owed to the plaintiff's intestate when he was injured. Although there was not the usual number of brakemen on the top of the cars which were being taken out, it was not occasioned by the negligence of the defendant or the yard-master, because they were provided and on hand, and neither the yard-master nor his assistant are shown to have had any notice or knowledge that they were not on the train or were required. The former as the servant of the company had no especial duty or power in this respect, and was after all but a fellow servant, charged with the general duty of superintending the yard. He employed the men who distributed the cars, but not the car repairers, and they worked together, and the car repairers gave notice to the one who had charge of the switch engine *Page 176 
when to move the cars from the track, and no train was drawn out without an order from one of the car repairers. The yard-master had no control in starting or in the distribution of the cars. The head brakeman had immediate charge of this branch of the work and the engine and men engaged in the same, all of which persons were in the yard at the time. He was not incompetent, and acted without any instructions from the yard-master or any one else, in accordance with established usage. Both the yard-master and head brakeman were co-employees with the deceased and the other employees, although not of equal degree, and all were virtually engaged in the same or a similar service. They were acting in harmony in performing the work necessary to be done in the freight yard, with no special authority of any single one over another, except as to the particular work of removing the cars, when the head brakeman exercised a general superintendence over his associates. All were engaged in the same common work and for the same common purpose, and the acts of no one of them could render the defendant liable for an injury to another. As the corporation employed all the men which were required who were of a sufficient degree of skill and capacity, and furnished them with all the means which were essential for a proper, faithful and intelligent discharge of their several duties, and was under no obligation to direct their actions in every instance to a greater extent than was actually done, and as the same number of men, and the same degree of care would not always be required, it was justified in leaving to them the exercise of their own discretion and judgment, and is not responsible for injuries caused by the negligence of one of the fellow servants engaged in the same general business.
The case considered is far different from that of a superintendent who is responsible for the employment of prudent, safe and reliable men, or of a head conductor whose duty it was to supply the necessary men for the management of a regular train and to see that they were on hand at the proper time. *Page 177 
As competent men were employed, there could be no liability of the defendant for any neglect to perform the duty assumed towards each other, for they occupied the position of fellow servants, and no recovery can be had for an injury occasioned by the negligence of one of them.
If we are right in the views indicated, the judge erred in denying the motion for a nonsuit, and for this error, without considering other questions raised, the judgment must be reversed and a new trial granted with costs to abide the event.
All concur, except CHURCH, Ch. J., dissenting, and ALLEN, J., taking no part.
Judgment reversed.