ELLA A. DANA, as Administratrix, etc., Respondent, *v.* THE
NEW YORK CENTRAL AND HUDSON RIVER RAIL-
ROAD COMPANY, Appellant.

*Negligence — master and servant — what persons are considered as co-employes*

The defendant, a railroad company, was accustomed, to the knowledge of its
employes, to run upon its single track, extending from Syracuse to Rochester
*via* Auburn, extra or wildcat trains, the movements of which and of the regular
trains were regulated by telegraphic dispatches. By the printed rules with which
employes were furnished, its telegraph operators and engineers were directed
to comply strictly with the orders received by telegraph. The defendant's super-
intendent having decided, on August twenty-second, to send an extra freight
train to Cayuga, telegraphed to its operator at that station to have train No.
50, of which the plaintiff intestate was the engineer, held on its arrival at that
station until further orders. The operator having received the message, and
replied to defendant's superintendent, found the intestate, and, by mistake,
told him to hold his train until the arrival of a regular train, known as No. 61,
instead of telling him to hold it for orders. The intestate having left the
station with his train after the arrival of No. 61, ran into the extra about a
mile and a-half from the depot, and was killed.
In an action to recover the damages occasiond by his death, the court charged
the jury that the telegraph operator and the deceased were not co-employes.
*Held,* that this was error.

Appeal from a judgment in favor of the plaintiff entered upon
the verdict of a jury, and from an order denying a motion for a new
trial made upon the minutes of the justice before whom the action
was tried.

Dana, the plaintiff's intestate, had been for many years an
engineer on that part of defendant's road from Syracuse to Roches-
ter *via* Auburn, which is a single track. It is usual on that road
to run extra or wildcat trains, and the movement of such trains, and
also of the regular trains which may be on the road and affected
by such wildcat train, are directed and controlled by telegraphic
dispatches which are sent from the superintendent's office at
Rochester. Dana well knew of this method of moving trains on
the road and had in his possession a printed copy of the regulations
for running trains. Dana, with freight train No. 50, left Rochester
for Syracuse on 22d August, 1878, on time, and reached Cayuga

station at 4:30 P. M., which was five minutes ahead of schedule time. A regular freight train, No. 61, from Syracuse west to Rochester, was due at Cayuga at 4:35 P. M., and its leaving time was 4:50 P. M. Keiffer was telegraphic operator at Cayuga for defendant, and was competent for his position. Defendant on that day desired to run a wildcat train from Auburn west to Cayuga on the time of Dana's train No. 50, and the superintendent at Rochester sent a dispatch to Kieffer at Cayuga, before No. 50 arrived there, directing him to hold "No. 50 for orders." Keiffer answered the dispatch to Rochester showing he understood the order correctly, and thereupon the superintendent telegraphed from Rochester to Auburn for the wildcat train to run from Auburn to Cayuga regardless of No. 50 and it was accordingly started. Costello was station agent at Cayuga having charge of the sale of tickets there, and by the printed regulations of defendant was forbidden to be absent from his station without leave of the superintendent, but in disregard of such orders on the 22d August, 1878, left Cayuga at 2 P. M. and was gone until 6 P. M. When he left he requested Keiffer to attend to his duties at the ticket office, and he went to the office at about 4:25 P. M. and sold tickets for a passenger train going west. When he left the ticket office he met Luce, conductor of train No. 50, and then told him to hold No. 50 for train No. 61, instead of telling him to hold No. 50 for orders. Keiffer intended to give Luce the directions to hold No. 50 for orders, but failed to do so. Luce waited until train No. 61 came to Cayuga from the east and then started for Auburn with train No. 50, and about a mile and a-half east of Cayuga collided with the wildcat train referred to and Dana was killed. The action of all the employes, except Keiffer, in directing the moving of the several trains was in strict accordance with the printed regulations for running trains, and the sole cause of the collision was Keiffer's failure to obey the orders he received from the superintendent's office to hold No. 50 for orders. The judge charged the jury, to determine whether the defendant was guilty of negligence in sending forward the train from Auburn without taking additional precaution to detain No. 50 at Cayuga, or otherwise providing for its safety. That if so the negligence of defendant was made out; this charge was excepted to.

The court was requested to charge that Keiffer being a competent

man for the position, the defendant had the right to send on the train from Auburn to Cayuga in reliance on Keiffer's performing the duty which he was directed to perform, that of detaining train No. 50. The court declined and the defendant excepted.

The court was further requested to charge that the defendant was not responsible for the negligence of Keiffer in the delivery of the order, which he was directed to deliver or commnnicate to the engineer or conductor of train No. 50. The court refused and defendant excepted.

The court was requested to charge that under the evidence in the case Keiffer was a co-employe of Dana, which was refused and defendant excepted.

The court did charge upon this last request: "I say to you that Keiffer, who is mentioned in the rules as agent or operator, was not a co-employe of Dana, the deceased, for the purpose of dispatching this train. The order of the superintendent to him was a direction to hold the train, and I say to you he was the mere hand or means adopted by the superintendent for that purpose." To which charge the defendant excepted.

The jury rendered a verdict in favor of the plaintiff.

*Edward Harris*, for the appellant.

*Thomas Raines*, for the respondent.

RUMSEY, J.:

It is a familiar principle that, as between the defendant and strangers, the defendant is responsible for the negligent acts of its servants while in the discharge of the duties of their employment. This is elementary. (2 Kent's Com., 259, 260.) It is now equally well settled that the master who has used proper care in the selection of his servants, is not liable to one servant for the negligence of another servant while engaged in the same common employment. (Sherman and Redfield on Negligence, sec. 86, and authorities there cited.) The reasons for this rule are well stated by Chief-Justice SHAW in *Farwell* v. *Boston and W. R. R. Co.* (4 Metc., 57), that the servant enters upon the performance of the duties he assumes with full knowledge of all the risks, and adjusts his com-

pensation accordingly; that he is as likely to know those risks and as well able to guard against them as the master, and can quit the service when he is no longer willing to face the perils of the occupation. He further says, at page sixty, that the "implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself."

While this rule is admitted fully in this State, much difficulty exists as to its application, and the books contain many cases upon that subject. In this case the learned judge before whom it was tried evidently did not think the doctrine had any application, for he held as matter of law that Dana, plaintiff's intestate, was not a co-employe with Keiffer, the telegraph operator, whose negligence caused the injury. He instructs the jury that the first question for their consideration was whether "the peremptory order given to the wildcat train to proceed from Auburn to Cayuga regardless of No. 50, without detaining No. 50 at Cayuga, or otherwise securing its safety, was a negligent act on the part of the defendant," and if they do so find, the defendant's negligence is made out. This charge is clearly correct if Dana and Keiffer were not co-employes, for in that case the defendant is directly responsible for the negligent act of Keiffer and all its consequences to Dana. As there was no question but that the negligent act of Keiffer was the cause of the collision and there was no question of contributory negligence on the part of Dana, the plaintiff, under the charge, was entitled to a verdict as a matter of course. The consideration of the question whether Dana and Keiffer were co-employes was taken entirely from the jury by the direct charge that they were not so, and the determination as to the correctness of this portion of the charge necessarily includes the several requests to charge in regard to that relation and the refusals of the court to do so, which were excepted to by defendant. The practice of running extra or wild-cat trains over the Auburn branch of the defendant's railroad was of long standing, was well understood by Dana and all its employes engaged in running trains. As such extra trains would necessarily interfere to some extent with the movement of regular trains over the road, the movements of all trains which may be affected by such extra trains are directed by telegraphic dispatches sent from the superintendent's office at Rochester. To insure safety and guard

against collision of trains the defendant adopted rules, of which each conductor and engineer of trains on the road was furnished with printed copies. Dana was in possession of a copy of those rules. These rules peremptorily required, amongst other directions to insure safety of the trains, that when an operator receives an order to hold a train, he must obey it strictly and conductors and engine men must respect such orders and comply with them in all cases. It is a very clear proposition that such compliance is absolutely necessary to insure the safety of persons and property upon trains subject to movements by such orders, and the failure of Keiffer to obey his positive instructions was the only cause of the collision which resulted in the death of Dana. Telegraph operators, at the several points upon the railroad where extra trains must pass, are as absolutely necessary to enable the defendant to run trains by telegraph as are conductors or engineers, and it is difficult to see why they are not co-employes with such conductors and engineers engaged in the same occupation of running trains by telegraph. Both are the instruments of the controlling power of the corporation to accomplish a common purpose, the successful accomplishment of which depends upon the diligence and care of each in obedience to orders, which care should be in proportion to the dangers to be avoided. It is not necessary that both employes should be engaged in the same sort of services under a common employer. In *Farwell* v. *Boston and W. R. R. Co.* (4 Met., 49), before cited, it was held that a switch tender and the conductor of a passenger train were co-employes, and that the latter could not recover from the company for the negligence of the former. In *Gillshannon* v. *Stony Brook R. R. Co.* (10 Cush., 228), a common laborer, in repairing the track and who rode morning and evening several miles to the place he worked, on the gravel train of the defendant, was held to be a co-employe of the person in charge of the gravel train. The case of *Russell* v. *The Hudson River R. R. Co.* (17 N. Y., 134) is like the one in the 10 Cushing, before cited, in all respects; *Besel* v. *N. Y. C. and H. R. R. R. Co.* (70 N. Y., 171.)

The risk which resulted in the death of Dana, in view of these authorities, we think must be held to be one which entered into the contemplation of Dana when he entered upon his work, and the

charge of the judge that he was not a co-employe with Keiffer was erroneous. If the evidence upon the point was at all doubtful, the question should. have been left to the jury to say whether they were co-employes or not.

The judgment and order should be reversed and a new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

Order and judgment reversed and new trial ordered, costs to abide event.