1067. The learned referee has quite satisfactorily discussed the facts in an opinion delivered in conjunction with his report. We are of the opinion that his report should be sustained.

Judgment affirmed, with costs. All concur.

---

### EATON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. February 9, 1897.)

FELLOW SERVANTS—CAR INSPECTOR AND BRAKEMAN.

    A car inspector is a fellow servant of a brakeman who is injured by a brake which is out of repair, where a rule made it the duty of the brakeman to inspect the brakes at every stopping of the train. Ward, J., dissenting.

Appeal from trial term, Wayne county.

Action by Edwin A. Eaton against the New York Central & Hudson River Railroad Company to recover for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on a case containing exceptions, defendant appeals. Reversed.

This action was begun December 5, 1892, to recover damages for a personal injury caused, it is alleged, by the negligence of the defendant. From some time in 1882 until November 17, 1890, the plaintiff was employed by the defendant as a brakeman. November 17, 1890, the defendant received at East Buffalo, from the Lake Shore & Michigan Southern Railroad Company, box car No. 8,468, which belonged to the Newport News & Mississippi Valley Railroad Company. It was inspected by the defendant's inspectors, and placed at the rear of an extra freight train, being the first car ahead of the caboose, which left Buffalo between 12 and 1 o'clock in the afternoon of that day, bound for Syracuse, N. Y. At 5:55 p. m. the train reached Brown Street Station, at Rochester, and the plaintiff attempted to set the rear brake on car No. 8,468. When the plaintiff applied force to the brake wheel, the eyebolt in the lower end of the brake shaft, to which the brake chain connecting the brake shaft with the brake beam was attached, gave way, and the plaintiff was thrown to the track, and run over by the caboose. Both of his legs were so crushed that the right one was amputated a few inches above the knee, and the left one two inches below the knee. As a ground of recovery, the plaintiff alleged in his complaint that "the brake which he was operating was so carelessly and negligently constructed, and so worn, old, and out of repair, that the brake chain and pin or bolt attached thereto and connected therewith broke and gave way, and the plaintiff, by reason thereof, was thrown from the top of said freight car." It is further alleged in the complaint "that it was the duty of the defendant to provide for its employés, and for this plaintiff, as such brakeman, good, safe, and secure cars, car brakes, appliances, and machinery, and to keep the same in good repair; that defendant, not regarding its duty in this behalf, negligently, carelessly, and unskillfully provided, for the use of the plaintiff on the day last aforesaid, unsafe, defective, and dangerous freight cars, car brakes, machinery, and appliances, and allowed the same to be used by him, of which it had due notice." The defendant, in its answer, alleged that the accident was caused by the negligence of the plaintiff, and by the negligence of his fellow servants. This case has been twice tried. On the first trial the plaintiff was nonsuited, which was set aside, and a new trial granted, by the general term of the Fifth department, no opinion being written. 86 Hun, 617, 35 N. Y. Supp. 1106. On the trial under review the plaintiff had a verdict for $15,000. A motion for a new trial on a case containing exceptions was heard and denied at special term, and a judgment entered, from which, and from the order denying a motion for a new trial, the defendant has appealed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward Harris, for appellant.
William S. Jenney, for respondent.

FOLLETT, J.   The brake shaft on car No. 8,468 was an iron rod about 1¾ of an inch in diameter, extending from a point about 2 feet above the deck of the car to a point below its floor.   On the upper end of the brake shaft was a brake wheel, which was turned by the brakeman when the brake was applied to the wheels of the car.   On the deck of the car there were the usual ratchet and dog for holding the brake against the wheels of the car when it was applied.   In the lower end of the brake shaft, underneath the car, was an eyebolt about one-half of an inch in diameter, and three inches long, on one end of which was an eye, in which the brake chain was fastened, and on the other end a nut, which held the eyebolt in the brake shaft. When force was applied to the brake wheel, the brake chain was wound around the brake shaft, and the brake shoes were brought against the wheels, and held in position by the ratchet and dog on the deck of the car.   The testimony given on the trial justified the jury in finding that some part of the eyebolt between the nut and eye was worn, so that the worn part was about half its original size, and by reason thereof it broke when the plaintiff attempted to set the brake.   At what particular point between the nut and the eye the bolt was worn, and the length of the worn part, were not distinctly disclosed by the testimony, but it seems highly probable that the wearing was on that part of the eyebolt within the brake shaft.   The only negligence alleged or attempted to be proved was the use by the defendant of this car, having this worn and weakened eyebolt.   It will be borne in mind that this car was not owned by the defendant, but came on to its road at East Buffalo, on the morning of the day of the accident.

Two legal questions are presented by the facts in this case:   (1) Is the failure of the defendant's inspectors to discover that the eyebolt was worn negligence, and, if so, is it actionable negligence in favor of this plaintiff?   (2) Is the failure of the plaintiff to discover the defective eyebolt negligence on his part?

At East Buffalo the defendant had three inspectors of cars,— Biehler, who had been an inspector for 22 years; Claus, who had been an inspector for 15 years; and Bergen, the length of whose service does not appear.   There is no testimony tending to show that any one of the inspectors was incompetent or negligent when the car was inspected, unless inferable from the failure to discover that the eyebolt was worn and weakened.   It was Bergen's duty to inspect the roofs of cars, and the duty of the other two inspectors to inspect the running gear and sides of cars.   These inspectors testified on the trial that on the morning of November 17, 1890, they inspected this car at East Buffalo, Bergen passing over the roof, and the other two inspecting the sides and running gear; one inspecting on one side, and the other on the other side, of the car. The inspectors' book was produced, showing the cars inspected by them November 17, 1890, by which it appeared that car No. 8,468 was inspected by the three inspectors on that day.   The inspectors

testified that it was their custom to examine the brakes, though Claus testified that he had no recollection of examining the brakes on car No. 8,468, but other defects were found about the car, which were noted in the inspectors' book, in the handwriting of Claus, and in the handwriting of Biehler. The defects found and noted had no relation to the cause of the accident. It may be that whether the defect in the eyebolt was a latent or a patent one, discoverable or not discoverable by reasonable inspection, was a question of fact for the jury; however, in discussing this case, I shall assume that it was a question of fact for the jury, and was found for the plaintiff.

The employés on this freight train were the engineer, fireman, conductor, and three brakemen,—Prince, forward brakeman, Lewis P. Crocker, middle brakeman, and this plaintiff, rear brakeman. The plaintiff testified:

"I had some duties with reference to this train before leaving [East Buffalo]. I passed along the cars to see the couplings were all made and the cars were sealed,—the doors. I passed along one side. I recollect who passed along the other side. I think it was Crocker. I did not observe anything out of order about the cars as I passed along."

As before stated, the plaintiff testified that he had been employed by the defendant as a brakeman for about eight years. He also testified that he had seen the following rule many times, was familiar with it, and observed it:

"Rule 153. At all stoppings of trains the brakemen or trainmen must inspect the wheels, brakes, and trucks of the cars, and report any defects immediately to the conductor."

By this rule it was the duty of the plaintiff to inspect the brakes on this car at stations where the train stopped. The plaintiff testified that the first stop was for about 10 minutes at Wende, 17 or 18 miles east of Buffalo. He testified:

"I perform some duty with reference to that train while we are staying at Wende. I took an oil can, and looked over one side; that is, for hot journals or anything that we might notice wrong, dragging on the track. I made no careful inspection of the train. I went along, and looked for anything which I could observe. Crocker, I believe, did the same thing with reference to the other side of the train."

The second stop was at Batavia, 18 or 20 miles east of Wende, at which place they stopped twice, once to take on cars, and once for water, both stops occupying about 30 minutes. The third stop was at Coldwater, where the train took water. The fourth stop was at the Brown Street Station, at Rochester. Thus it appears that it was the plaintiff's duty to inspect the brakes of this car on four occasions,—at Buffalo, at Wende, at Batavia, and at Coldwater. If he neglected to obey the rule, he was negligent, and his negligence contributed to the accident. If the defective eyebolt were discoverable by a reasonable inspection, and he failed to discover it, he was negligent, and his negligence contributed to the accident. If the defect were latent, and not discoverable by a reasonable inspection, neither the plaintiff nor the inspectors were negligent.

Upon the general question whether car inspectors and brakemen are fellow servants, the authorities do not agree. Besel v. Railroad

Co., 70 N. Y. 171; Potter v. Railroad Co., 136 N. Y. 77, 32 N. E. 603; Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Harrison v. Railroad Co., 31 N. J. 293; Thomas, Neg. 892; 1 Bevin, Neg. 804; 2 Thomp. Neg. 1032, § 36; Shear. & R. Neg. (4th Ed.) § 204.    But none of these authorities reach the case at bar, for the reason that in none of them does it appear that inspection was a duty imposed on the brakemen as well as on the inspectors.    In this case, as shown by the evidence of the plaintiff, it was as much his duty as it was that of the inspectors to inspect the running gear of this train, and discover and report to the conductor all discoverable defects, and, in so far as this duty was concerned, he and the inspectors were fellow servants.    It would not, I think, be contended that the three inspectors were not fellow servants, though performing master's duties, and that any one of them could recover against the company for the negligence of his co-inspector; and I do not think that the case of the plaintiff is different.    If it were negligence in the inspectors not to have discovered the defect which caused the accident, it was the negligence of co-employés; and, if it were negligence on the part of the inspectors, the plaintiff was equally negligent, and he should have been nonsuited.    Unless this defect were discoverable by reasonable inspection, the accident arising from it was one of the ordinary risks of the plaintiff's employment.    Gottlieb v. Railroad Co., 100 N. Y. 462, 3 N. E. 344; Goodrich v. Railroad Co., 116 N. Y. 398, 22 N. E. 397.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event.    All concur, except WARD, J., dissenting.