JOHN DAIR, Respondent, v. NEW YORK AND PORTO RICO STEAMSHIP COMPANY, Appellant.

Master and servant — when master not liable to servant for injury caused by error of foreman, or omission of a duty which rested upon him.

1. If, in a common-law action, it appears that in the execution of some detail of the common work, upon which a number of men are employed, an injury is occasioned to one through the fault of another, whether he be the foreman or not, it is not to be imputed to the employer.

2. Defendant provided the necessary number of competent men to receive and stow away iron in the hold of a vessel, and the foreman transferred some of the men to other work. An unusually large load of iron was hoisted in, and in handling it plaintiff was injured. *Held*, that whether the act of the foreman be regarded as negligence on his part or an error of judgment, it was the omission of a duty which rested upon him as a fellow-servant concerning

a detail of the work, and that no duty rested upon the defendant to distribute the men at their work or to see to it that the men were kept at their proper stations.

*Dair* v. *N. Y. & P. R. Steamship Co.*, 139 App. Div. 751, reversed.

(Argued January 19, 1912; decided February 2, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 29, 1910, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. Clyde Sherwood* and *Amos H. Stephens* for appellant. The defendant having furnished a sufficient number of men to do the work, any error of judgment or even negligence on the part of the foreman of this gang working at hatch No. 3 in distributing the members of his gang to their respective stations was not imputable to the employer, as it related to a detail of the work in which the gang was engaged, necessarily intrusted by the employer to the skill and judgment of the hatch foreman. (*Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 171; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Central R. R. of N. J.* v. *Keegan*, 160 U. S. 259; *Reichel* v. *N. Y. C. & H. R. R. R. Co.*, 130 N. Y. 682; *Hussey* v. *Coger*, 112 N. Y. 614; *Cullen* v. *Norton*, 126 N. Y. 1; *Loughlin* v. *State*, 105 N. Y. 159; *Kaare* v. *T. S. & I. Co.*, 139 N. Y. 369; *Vogel* v. *Am. Bridge Co.*, 180 N. Y. 373; *Rose* v. *R. R. Co.*, 58 N. Y. 217.) The evidence failed to show that the act of the hatch foreman in transferring the four men from the hold to the lighter was a negligent act. (*Maue* v. *Erie R. R. Co.*, 198 N. Y. 221, *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31; *Marsh* v. *Chickering*, 101 N. Y. 396; *Burns* v. *O. S. I. & M. Co.*, 188 N. Y. 175; *Quigley* v. *Levering*, 167 N. Y. 58; *Cregan* v. *Marston*, 126 N. Y. 568; *Madigan* v. *O. S. Nav. Co.*, 178 N. Y. 242; *Kimmer* v. *Weber*, 151 N. Y. 417.)

*Joseph H. Lecour, Jr.*, for respondent.  It was the defendant's duty to furnish four men for the specific task in which plaintiff was engaged; that duty was not performed as a matter of law by furnishing a hatch gang of the usual size.  (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Sprong* v. *B. & A. R. R. Co.*, 58 N. Y. 56; *O'Connell* v. *Thompson*, 72 App. Div. 45; *Harvey* v. *N. Y. C. & H. R. R. R. Co.*, 19 Hun, 556; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Albert* v. *Bache*, 32 N. Y. S. R. 1014; *Hankins* v. *E. R. R. Co.*, 142 N. Y. 416; *Whittaker* v. *D. & H. Co.*, 126 N. Y. 544; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Vogel* v. *A. B. Co.*, 180 N. Y. 373; *Crispin* v. *Babbitt*, 81 N. Y. 516.)  The defendant's duty to supply a sufficiency of workmen could not be delegated to Gleason, so as to relieve defendant from liability.  (*McCarthy* v. *P. R. R. Co.*, 189 N. Y. 170; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Munn* v. *D. & H. C. Co.*, 91 N. Y. 500; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Sciolaro* v. *Asche*, 198 N. Y. 77; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38.)  The defendant is not relieved from responsibility to plaintiff for negligence in the performance of the master's duties, by reason of the fact that Gleason's negligence as a fellow-servant may have concurred in causing the injury.  (*Strauss* v. *N. Y., N. H. & H. R. R. Co.*, 91 App. Div. 583; *Larkin* v. *W. M. Co.*, 45 App. Div. 10; *Flanagan* v. *Carlin Cons. Co.*, 134 App. Div. 236; *Pepe* v. *Utica Pipe Co.*, 132 App. Div. 458; *Swanton* v. *Hastings Pavement Co.*, 129 App. Div. 553; *Young* v. *Syr., B. & N. Y. R. R. Co.*, 45 App. Div. 296; *Tetherton* v. *U. S. Talc Co.*, 41 App. Div. 613.)

Gray, J.  This is a common-law action to recover damages of the defendant for personal injuries sustained by the plaintiff, while in its employment as a stevedore.  A vessel of the defendant was being loaded with a cargo of corrugated iron and the particular negligence charged

in the complaint was the failure to provide sufficient and competent men for the work. The case was submitted to the jury upon the question whether there had been a neglect of a duty on the part of the defendant to furnish a sufficiency of fellow-workmen to do the work, to which the plaintiff had been assigned. The question of the competency of the men in the gang was withdrawn from the jury and is not in the case. A verdict was rendered for the plaintiff; but the trial court, on the defendant's motion, set it aside and dismissed the complaint. The Appellate Division has reversed the judgment entered in favor of the defendant and has ordered a new trial; the justices of that court sharply dividing in opinion.

The iron was being transshipped from a lighter into the hold of the defendant's vessel. For that purpose, a gang of eighteen men were employed; eight being placed in the hold of the vessel and the others being engaged on the deck and elsewhere, preparing the cargo for its transshipment. Gleason was over the gang as foreman; directing the men in their work and working with them upon it. The plaintiff was stationed in the hold and with him were seven others; whose business it was to receive the iron, as it descended, and to stow it away. It must be assumed that, for the performance of the general work, eighteen men were necessary and that it was customary to have eight of them in the hold. Of these eight men, four would stand on each side of a propeller shaft, running the length of the vessel, and, alternately, receive and handle the iron, as it descended on either side of the shaft. This iron was in sheets of about six feet in length by two feet in width and was handled in bundles of an average weight of two hundred pounds. Several of these bundles, bound together by a chain, would be hooked to a fall of the ship's tackle, raised from the deck and, then, lowered into the hold. Upon the day in question, matters had proceeded, in the usual way, until the afternoon; when Gleason, the foreman,

transferred four of the men from the hold and put them to work upon the lighter. That left the plaintiff with three other men in the hold to unsling, and stow, the iron bundles. Gleason, who was a witness for the plaintiff, said that, in the matter of making this change, he was using his own judgment. After that, the work proceeded in the hold, two men, only, working on either side of the shaft; until some five, or six, "draughts" of the iron, as the loads in course of transshipment are termed, had been lowered. These "draughts" had averaged from six to eight bundles in each and had been easily handled. To quote from the plaintiff's testimony, "they would come down six to eight in a bundle. Those we could handle easily — we had handled a number of them, just two of us." When the accident happened to the plaintiff, a heavier "draught" was being lowered and, after being unbound, it fell over upon the plaintiff's leg. His testimony describes the occurrence in this wise: "I remember that draught in particular. * * * As I tried to steady it, I could not hold it up, because the draught was too big. * * * If it had been like the other draughts, we could have managed it. * * * I tried to hold up this draught on edge, but it came right over on me. * * * The trouble with that one was, it was too heavy; unusually heavy. * * * When we tried to ease this one down, we couldn't ease it the same as we had done with the others, and we couldn't get out of the way and it came right back. * * * It tipped over." The plaintiff's fellow-workman in the hold, describing the character of their work, testified that, in handling the draughts, when there were four men, "three men would steady them and one man take the hook off." He, also, testified that, after the number of men was so reduced, at first, "we handled them, (the draughts), without any difficulty, we could have handled this one without any difficulty, if it had been no heavier than the others. It was the extra size and weight that made the trouble."

The evidence in this case makes apparent the fact that, while eight men should have been in this hold, four on either side of the shaft dividing it, in order to handle the bundles of iron, the reduction of that force, by withdrawing half of the men, did not affect the situation, until an unusually large load was hoisted in. But assuming that the usual number of eight men should have been in the hold for the handling of loads of ordinary size and to be prepared for the case of extraordinary ones, the question is whether the act of Gleason, the gang foreman, should be imputed to the defendant, as the general employer. Whether Gleason's act, in transferring some of the men from the hold to another part of the work, was a negligent one on his part, or, as he says, one in the exercise of his judgment, how was the defendant at fault? It did not relate to a personal duty of the defendant. The stowing away of the iron in the hold was, obviously, but a detail of the general work of loading the vessel, upon which the gang was engaged; as to performing which experience and observation were the guides. Gleason, though the foreman, was one of the complement of men and a fellow-servant; however in grade above them. He was, himself, trucking the iron from the lighter. Concededly, a sufficient number of men were provided for, and continuously retained upon, the general work of loading the vessel with a cargo of the iron and there is no suggestion that they were not competent workmen. The duty of the defendant, in that respect, was fully discharged and, necessarily, details of the work were left to the men. With equal necessity, their foreman was invested with some measure of discretion and judgment in managing the execution of the work.

If, in the execution of some detail of the common work, upon which a number of men are employed, an injury is occasioned through the fault of one of them, whether he be the foreman, or not, it is not to be imputed to the

employer.   When Gleason omitted to keep the eight men
in the hold of the vessel, whether it be regarded as neg-
ligence on his part, or as an error of judgment, it was the
omission of a duty, which rested upon him as a fellow-
servant, concerning a detail of the work.   The defendant
having been careful to provide a sufficient number of
competent workmen, no further duty rested upon it with
respect to the distribution of the men in the various
phases of the work.   It was under no obligation to direct
their actions at all moments; or to see to it that the men
were kept at their proper stations.   This is the rule infer-
able from many cases, in which a master has committed
the management of ordinary work to a co-employé of
superior grade, after discharging all those other obliga-
tions incumbent upon him, when planning and prescrib-
ing the work to be done.   (*Besel* v. *N. Y. C. & H. R. R.
R. Co.,* 70 N. Y. 171; *Potter* v. *N. Y. C. & H. R. R.
R. Co.,* 136 id. 77; *Loughlin* v. *State of New York,* 105
id. 159, 163; *Cullen* v. *Norton,* 126 id. 1; *Madigan* v.
*Oceanic Steam Nav. Co.,* 178 id. 242; *Vogel* v. *American
Bridge Co.,* 180 id. 373.)

In *Besel* v. *N. Y. C. & H. R. R. R. Co.,* (*supra*), a
part of a train, which was being moved, separated and
running back against some cars standing on the track,
under one of which the plaintiff's intestate was working,
caused them to run over him.   It was contended that a
sufficient number of brakemen were not on the detached
train, engaged in the work of running it and in distrib-
uting the cars, and that none was at the rear end of the
train.   A judgment for the plaintiff was reversed upon
the ground that the defendant was not liable for an
injury, which was to be imputed to the negligence of the
head brakeman, a fellow-servant.   The general rule was
laid down that the duty of the corporation was to employ
a sufficient number of workmen and such persons over
them as were qualified, competent and skillful.   The
opinion, then, proceeded to consider the question of the

alleged negligence: "Although there was not the usual number of brakemen on top of the cars which were being taken out, it was not occasioned by the negligence of the defendant, or the yard master, because they were provided and on hand, and neither the yard master nor his assistant are shown to have had any notice, or knowledge, that they were not on the train * * *. The head brakeman had immediate charge of this branch of the work and the engine and men engaged in the same, all of which persons were in the yard at the time. * * * Both the yard master and head brakeman were co-employees with the deceased and the other employees, although not of equal degree. * * * All were engaged in the same common work and for the same common purpose, and the acts of no one of them could render the defendant liable for an injury to another. As the corporation employed all the men who were required who were of a sufficient degree of skill and capacity * * * and was under no obligation to direct their actions in every instance to a greater extent than was actually done, * * * it was justified in leaving to them the exercise of their own discretion and judgment." (p. 175.) In *Potter* v. *N. Y. C. & H. R. R. R. Co.*, (*supra*), the plaintiff's intestate, while inspecting cars, was killed by being crushed between bumpers, as the result of the shunting of cars upon the track. It was claimed that proper care required there should be flagmen upon the cars to signal the engineer and a brakeman on the shunted cars to control their motion. The judgment recovered by the plaintiff was reversed, and a refusal to nonsuit was held to have been error, upon the ground that, the master's duty having been fully discharged, by providing sufficient and competent brakemen to do the work under proper regulations, the failure of the brakeman to be at his post was the negligence of a co-servant. It was held that the master was under no duty "to see to it that the servants employed as brakemen or otherwise should be at their posts. * * * It

is quite obvious," (Judge ANDREWS remarks in his opinion), "that the work of shifting cars in a railroad yard must be left in a great measure to the judgment and discretion of the servants of the railroad who are intrusted with the management of the yard. The details must be left to them and all that the company can do for the protection of its employees is to provide competent co-servants and prescribe such regulations as experience shows may be best calculated to secure their safety." (pp. 81, 82.) (Citing *Besel* v. *N. Y. C. & H. R. R. R. Co., supra.*) While in actions by the servant to recover against the master for the results of some alleged neglect of a duty owing by him, each case must, usually, stand upon its own facts, nevertheless, in these cases, which have been cited, I think a general rule of non-liability appears and controls, where, as here, it is shown, not that there was an insufficient supply of competent workmen, but that the negligence, or error, of a co-employé of higher grade, in ordering their distribution, in the execution of a detail of the work, was the contributing cause. If the master has furnished all the workmen, required to perform the particular work, "it was," to use the language of Chief Judge RUGER, in *Hussey* v. *Coger*, (112 N. Y. 614, at p. 620), "the fault of the servants that a sufficient number did not co-operate to perform it safely, or do it in the manner prescribed by custom." In the case of *Flike* v. *Boston & A. R. R. Co.*, (53 N. Y. 549), cited in the opinion below, the defendant was held liable for negligence and a want of care; inasmuch as there was a deficiency of brakemen upon the train, which caused the accident to the deceased, a fireman on the engine. In that case, the condutor, whose business it was to make up the train and to station the brakemen, had failed to provide a sufficient number of them, when sending it out. As that was a primary duty owing by the defendant, as master, the neglect of the conductor was imputable to it. As to that duty, he occupied the

master's place. That case was referred to in the *Besel* and *Potter Cases,* (*ubi supra*), as illustrating a violation of the master's duty, in not having employed a sufficient number of men to perform the work.

I think that the charge of negligence against the defendant, in a failure to employ a sufficient number of men for the work in question, fails; inasmuch as the only insufficiency shown was an omission of the foreman to continue upon a part of the work the customary number of men; a fault, if it was one, which was added to in its gravity by increasing the size of the draughts, or loads. It will be remembered that the evidence showed that had the number of bundles in a load not been increased beyond what it had been, the men left in the hold would have been sufficient and it was, only, when the increased number was lowered that the accident happened. That was, again, a detail of the work, which the foreman was, solely, responsible for. In principle, the omission of duty in this case is analogous to that of the foreman, who, when the master has supplied some article necessary to the proper performance of the work in sufficient quantity, omits to avail himself of it when there is need and an accident ensues. Whether the omission is attributable to neglect, or to an error of judgment, it relates to a detail of the work and not to a personal duty of the master. (See *Madigan* v. *Oceanic Steam Nav. Co.,* 178 N. Y. 242, 245; *Vogel* v. *American Bridge Co.,* 180 id. 373.)

I think that the order of the Appellate Division should be reversed and that the judgment entered in favor of the defendant at the Trial Term, dismissing the complaint of the plaintiff, should be affirmed; with costs in both courts.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, HISCOCK and COLLIN, JJ., concur.

Order reversed, etc.