JOHN DOBSON, Respondent, *v.* BAY RIDGE OPERATING COMPANY, INC., Appellant.

First Department, November 14, 1924.

Ships and shipping — action to recover for personal injuries suffered by plaintiff, longshoreman, while working in vessel stowing cargo — plaintiff's gang consisted of six men and was engaged in stowing iron wheels — three of gang were assigned to other work — accident happened while large draft of wheels was being lowered — defendant employed sufficient number of workmen to load ship — plaintiff cannot recover on theory that defendant was negligent in failing to supply sufficient number of fellow-workmen in plaintiff's gang.

In an action to recover damages for personal injuries suffered by the plaintiff, a longshoreman, while he was engaged with others in stowing iron wheels in the hold of a vessel, in which it appeared that a sufficient number of men were employed to load the vessel, and that plaintiff's gang consisted of six men, three of whom, however, were assigned to other work before the accident, which occurred while an extra large draft of wheels was being lowered into the hold, a recovery cannot be had on the theory that the defendant was negligent in that it failed to supply a sufficient number of fellow-workmen to do the particular work in which the plaintiff was engaged at the time of the accident, for the defendant having engaged a sufficient number of men to load the vessel, it was not obliged to see that they were at all times properly distributed. The distribution of the men was a detail of the work necessarily left to the discretion of the foreman, and the rule is that an error of judgment by a competent employee concerning a detail in conducting the work is not chargeable to the master.

FINCH, J., dissents, with opinion.

APPEAL by the defendant, Bay Ridge Operating Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of April, 1923, upon the verdict of a jury for $1,200.

*E. C. Sherwood* [*H. H. Brown* of counsel], for the appellant.

*Jeremiah A. O'Leary* [*John J. O'Leary* of counsel], for the respondent.

Martin, J.:

This is an action to recover damages for personal injuries. The accident, resulting in the injuries alleged to have been sustained by plaintiff, occurred at about two o'clock on the afternoon of the 27th day of March, 1920, on board the steamship *Pisaro* which lay at a pier in the North river. The defendant company was engaged in loading the vessel with a cargo which included a shipment of iron car wheels. Drafts of these wheels were made up and lowered through an open hatch into the hold of the vessel. The duties of the plaintiff, a longshoreman in defendant's employ, required his presence in the hold of the ship to assist in the work of receiving the drafts.

On the morning of the day on which plaintiff sustained his injuries, two gangs, each of which consisted of six men, were put to work handling the drafts in hatch No. 5, the two groups being separated, while working, by a tunnel which divided the hatch. At about ten o'clock a man named Skelly, who had charge of the work, withdrew two of the men from the plaintiff's gang, assigning them to other work, and somewhat later another man left the hatch. Plaintiff says he complained to Skelly that the three men remaining were not enough to handle the drafts, but the latter replied that years ago plaintiff would have been glad to have three men working.

In describing the accident the plaintiff said that the winchman, in response to plaintiff's signal, lowered a large draft which, instead of landing on the floor, landed on the top of the tunnel. Plaintiff then gave another signal to raise it. " He [the winchman] raised the draft up. Then we told him to lower it. See, to lower the draft. The draft was lowered. Higgins and me and Hickey — Hickey was pulling forward. I was pushing behind and Higgins was. There was a stanchion about five foot from the tunnel. The draft fouled the tunnel. We were pulling with all our might, to get the draft in. We pushed it until we got it in about between six and seven feet. The draft then swung back, and it was going towards the stanchion and the tunnel. Hickey yelled out ' Look out,' and Higgins jumped away from the draft, and I tried to get away from the draft, and the wheels dropped — the draft landed and the wheels spread out and the chain unhooked, and the wheels caught me on the shin and bruised my shin."

During the first few hours the men loaded bags of wax which

two men could handle, and for several hours thereafter they lowered crated machinery which it took all three to handle. Thereafter without any difficulty they were stowing away iron wheels. The draft of wheels which injured plaintiff consisted of fifteen wheels and was larger than any other draft that had been sent down by the winchman.

The sole question submitted to the jury was whether the defendant negligently failed " to supply a sufficient number of fellow-workmen to do the particular work at hand at the time the injuries were received." Evidence that the defendant employed in loading the *Pisaro* 136 or 137 men was uncontradicted. No evidence was offered in support of the other allegations of negligence contained in the complaint. It was the alleged negligence of Skelly in reducing the size of the gang that plaintiff sought to impute to the defendant company to render it liable for the accident.

Plaintiff's testimony would indicate that the accident was due to the large draft and to the unhooking of the chain and consequent scattering of the wheels, and not, as was contended, to the scarcity of men in the gang. In describing the occurrence the plaintiff said that " the chain unhooked, and the wheels caught me on the shin and bruised my shin; " while his witness Higgins said that " the hook leaving the chain caused the wheels to scatter and fall on Dobson's leg." Plaintiff's witness Hickey said: " * * * We thought to try to shove the draft back, forward, as far as we could, and we could not do it, and we landed it on the tunnel, and on the landing the hook gave way from the draft altogether."

It is contended by defendant that, assuming Skelly's act in withdrawing the men from plaintiff's side of the hatch and assigning them to other work was the proximate cause of the accident, such act related to a detail of the work and not to a personal duty which the employer owed its men, and upon it no negligence on the part of the defendant can be predicated; that a sufficient number of men were provided for the work of loading the *Pisaro*, and there is nothing to indicate that any of them were incompetent; that it fully discharged its duty, and details of the work were properly left to the men and their experienced foremen.

This case appears to be similar in almost all respects to the case of *Dair* v. *New York & P. R. Steamship Co.* (204 N. Y. 341, 344), in which Judge GRAY said: " Upon the day in question, matters had proceeded, in the usual way, until the afternoon; when Gleason, the foreman, transferred four of the men from the hold and put them to work upon the lighter. That left the plaintiff with three other men in the hold to unsling, and stow, the iron bundles. Gleason, who was a witness for the plaintiff, said that,

in the matter of making this change, he was using his own judgment. After that, the work proceeded in the hold, two men, only, working on either side of the shaft; until some five, or six, ' draughts ' of the iron, as the loads in course of transshipment are termed, had been lowered.  These ' draughts ' had averaged from six to eight bundles in each and had been easily handled.  To quote from the plaintiff's testimony, ' they would come down six to eight in a bundle.  Those we could handle easily — we had handled a number of them, just two of us.'  When the accident happened to the plaintiff, a heavier ' draught ' was being lowered and, after being unbound, it fell over upon the plaintiff's leg.  His testimony describes the occurrence in this wise: ' I remember that draught in particular.  *  *  *  As I tried to steady it, I could not hold it up, because the draught was too big.  *  *  *  If it had been like the other draughts, we could have managed it.  *  *  *  I tried to hold up this draught on edge, but it came right over on me. *  *  *  The trouble with that one was, it was too heavy; unusually heavy.  *  *  *  When we tried to ease this one down, we couldn't ease it the same as we had done with the others, and we couldn't get out of the way and it came right back.  *  *  *  It tipped over.'  The plaintiff's fellow-workman in the hold, describing the character of their work, testified that, in handling the draughts, when there were four men, ' three men would steady them and one man take the hook off.'  He, also, testified that, after the number of men was so reduced, at first, ' we handled them (the draughts) without any difficulty, we could have handled this one without any difficulty, if it had been no heavier than the others. It was the extra size and weight that made the trouble.' "

The master having furnished a sufficient number of men to load the vessel, was not obliged to see that they were at all times properly distributed.  This was a detail of the work necessarily left to the discretion of the foreman.  An error of judgment by a competent employee concerning a detail in conducting the work is not chargeable to the master.

In addition, however, there was no difficulty in handling the drafts until a very large draft containing fifteen wheels was lowered, and the fact that the wheels became separated by reason of the chain becoming unhooked appears to have been the cause of the accident.

The judgment should be reversed with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH and MERRELL, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting):

The finding of the jury establishes as matter of fact that there was an insufficient number of men to handle the draft and that such fact was called to the attention of the foreman in charge of the work. Also that the insufficiency in the number of men employed was the proximate cause of the accident. While the wheels became separated because the chain became unhooked, the chain became unhooked because the number of men employed was insufficient to manipulate the heavy draft. The case of *Dair* v. *New York & P. R. Steamship Co.* (204 N. Y. 341), relied on as authority for reversing the judgment appealed from, is distinguishable from the case at bar, in that in the case at bar the foreman in charge of the work stood in the place of the defendant, said foreman testifying that he was " in charge of every man on the ship " with power to hire and discharge, and that it was his " duty * * * to hire and to put to work in that hold a number of men sufficient to handle drafts that were hoisted down, in safety." The case at bar thus falls within the rule enunciated in *Crispin* v. *Babbitt* (81 N. Y. 516), namely: " ' Where the master places the entire charge of his business in the hands of an agent, the neglect of the agent in supplying and maintaining suitable instrumentalities for the work required is a breach of duty for which the master is liable.' "

The case at bar is not a case where the master had furnished a sufficient number of men and the foreman through an error in judgment had failed to use the men so furnished; but it is a case where there was a failure of the master, acting through the foreman, a vice-principal, to furnish a sufficient number of men.

In so far as the contention that the plaintiff assumed the risk of the employment is concerned, it does not appear that the plaintiff realized that the lack of men was dangerous. He did complain of the lack of men, but this might well have been because of the extra effort entailed on the part of himself and the others who remained to handle the freight. This is borne out by the reply of the defendant's foreman in answer to plaintiff's request for additional men, " Years ago you would be glad to have three men working."

As was held in *Davidson* v. *Cornell* (132 N. Y. 228): Where, though the defect is apparent, an appreciation of the consequences which might result from it may have required some skill or judgment not possessed by an ordinary observer or the servant, he does not assume the hazards thereof at all events.

The drafts which the men were called upon to handle were of varying weights, and the plaintiff could not tell in advance whether or not they could be handled in safety by the number of men

furnished. Whether under the circumstances the plaintiff assumed the risk was a question properly left to the jury, and no sufficient reasons exist to disturb their finding on this issue.

It follows that the judgment should be affirmed, with costs.

Judgment reversed, with costs, and complaint dismissed, with costs.